### ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Plaintiff/Appellant,

v.

### Dr. Jesus Ortiz TORPOCO and Ginger Gail Pope, Defendants/Appellants.

Supreme Court of Tennessee, at Jackson.

June 27, 1994.

Joe Lee Wyatt, Walsh, McWhirter & Wyatt, Memphis, Robert V. Redding, P. Allen Phillips, Waldrop & Hall, P.A., Jackson, for appellant.

William M. Jeter, Glassman, Jeter, Edwards & Wade, P.C., Memphis, for Dr. Jesus Torpoco.

Albert C. Burnham, Krivcher, Magids, Neal Burnham & Cottam, Memphis, Russell X. Thompson, Bolivar, for Ginger Gail Pope.

## OPINION

O'BRIEN, Judge.

This case is derivative of an original action filed in the Circuit Court, Shelby County by defendant Ginger Gail Pope, against defendant, Dr. Jesus Ortiz Torpoco, alleging that he molested her during a medical examination. Subsequently, an amended complaint was filed by Pope, alleging that Torpoco engaged in sexual acts with her, taking advantage of her tender years, her lack of knowledge, and exploiting her trust in him as a doctor of medicine.

Torpoco referred this complaint to his professional liability insurance carrier, St. Paul Fire & Marine Insurance Company. The insurance carrier filed this declaratory judgment action naming the parties to the original suit as defendants, seeking a determination that its policy did not cover Dr. Torpoco for the acts alleged by Pope. Pope and the insurance carrier each filed motions for summary judgment.

The trial court granted Pope's motion for summary judgment, holding that the acts of Dr. Torpoco alleged in her amended complaint occurred during the "providing of professional services" by him, within the meaning of Torpoco's professional liability insurance policy. St. Paul appealed to the Court of Appeals, charging the trial court with error in granting Pope's motion for summary judgment holding that St. Paul had a duty to defend and a duty to indemnify Dr. Torpoco against Pope's complaint. That court further found that the medical malpractice insurance policy issued by St. Paul contained no provision denying coverage for the insured's intentional acts.

The Court of Appeals affirmed the judgment of the trial court on the issue of the duty to defend, but reversed on the issue of indemnity. The ruling was based on a determination that the duty to defend is dependent upon the allegations contained in defendant Pope's complaint. That court held that the record in the case did not permit a determination, as a matter of law, that St. Paul was under no obligation to indemnify Torpoco. The case was remanded for further proceedings.

This Court granted St. Paul's application for permission to appeal which raised two (2) issues:

(1) St. Paul has no duty under the policy of insurance issued Dr. Torpoco to either defend or indemnify him in the underlying court action.

(2) The public policy of Tennessee should forbid the coverage of an insurance policy for acts such as those alleged by defendant Pope in her complaint in the underlying court action.

Ginger Gail Pope has filed an application in which she requests this Court to reinstate the trial court's grant of summary judgment in her favor, submitting that the Court of Appeals erred in reversing in part the trial court's holding that the alleged acts of Dr. Torpoco occurred during the provision of professional services.

Dr. Torpoco has joined in the Pope application for permission to appeal averring that the trial court's ruling that St. Paul was obligated to defend and indemnify him and should be affirmed.

We have granted the appeal to review the issues involved under the standard estab-

lished in *Byrd v. Hall,* 847 S.W.2d 208 (Tenn. 1993), for evaluation of a motion for summary judgment under Rule 56 of the Tennessee Rules of Civil Procedure.

Our review of this record persuades us that the resolution of the first issue posed by the plaintiff in this case will effectively dispose of all other questions raised involving summary judgment procedures. That is whether St. Paul has any duty under the policy of insurance issued to Dr. Torpoco to either defend or indemnify him in the underlying tort action.

The trial court, in its order on the motions for summary judgment, found, upon the affidavit and deposition of Gerald S. Golden, M.D., upon the deposition of Jesus Ortiz Torpoco, M.D., and upon the motion of St. Paul Fire and Marine Insurance Company for summary judgment that the Pope motion for summary judgment was well taken and should be granted. He further found that Dr. Torpoco's policy of insurance issued by St. Paul Insurance Company included protection against claims for damages resulting from Dr. Torpoco's providing of professional services. He held that on the uncontroverted evidence in the record the acts of Dr. Torpoco, alleged in the amended complaint of Ginger Pope against him, occurred during the providing of professional services to her, within the meaning and intent of the insurance policy issued and that St. Paul Insurance Company had the duty to defend and indemnify Dr. Torpoco for the claims contained in her amended complaint. He held that the summary judgment motion by St. Paul Insurance Company was not well taken and should be overruled.

The determinative issue of St. Paul's duty to defend the claim against Dr. Torpoco under the policy issued to him is, of course, a legal question. The issue is whether any loss suffered is within the risk contemplated by the terms of the insurance contract. This is a question of law and not subject to summary judgment applications. See *Tennessee Farmers Mutual Insurance Co. v. Witt,* 857 S.W.2d 26, 29 (Tenn.1993). In *Tata v. Nichols,* 848 S.W.2d 649, 650 (Tenn.1993), we stated the issue thusly:

> The analysis used in construing insurance policies is well settled. "Insurance contracts like other contracts should be construed so as to give effect to the intention and express language of the parties." Words in an insurance policy are given their common and ordinary meaning. Where language in an insurance policy is susceptible of more than one reasonable interpretation, however, it is ambiguous. Where the ambiguous language limits the coverage of an insurance policy, that language must be construed against the insurance company and in favor of the insured. (Citations omitted).

The only evidence provided by St. Paul in support of its motion for summary judgment is a reference to certain pertinent and material portions of the professional liability insurance policy issued to Dr. Torpoco, as follows:

> Your professional liability protection covers you for damages resulting from:
>
> (1) Your providing or withholding of professional services.
>
> (2) The providing or withholding of professional services by anyone whose acts you are legally responsible for.

Other relevant coverage listed in the terms of the policy include, "We'll defend any suit brought against you for damages covered under this agreement. We'll do this even if the suit is groundless or fraudulent.... We'll pay all cost of defending a suit, including interest on that part of any judgment that doesn't exceed the limits of your coverage."

St. Paul argues that the initial action in this case involves an underlying tort suit which should not be covered within St. Paul's duty to defend because it does not involve damages covered under the insurance agreement. This specific issue has not yet been reached by this Court although it was discussed at length in *St. Paul Fire & Marine*

Insurance Co. v. B.L. Couch, M.D., P.C., et al., in a Court of Appeals opinion.[1] St. Paul filed a declaratory judgment in that case. The policy provisions were apparently the same as those involved here. The conduct charged against the defendant was factually similar. The trial court granted St. Paul's motion for summary judgment and the Court of Appeals reversed on the issue of the plaintiff's duty to defend, relying principally on the Arizona case of St. Paul Fire & Marine Insurance Co. v. Asbury, 149 Ariz. 565, 720 P.2d 540 (1986).

We find Asbury precisely on point, both factually and in its legal conclusions. In that case the Court stated, "the sole issue is whether the language 'providing or withholding of professional services' (with no applicable policy exclusions) provides coverage for injuries and damages that result from unprofessional acts of a physician." The Asbury court cited the following statement of the trial court in the case:

> The question of insurance coverage does not turn on whether the conduct was negligent or intentional, or whether or not there was an assault and battery. Regardless of the category in which the underlying complaints are placed, they clearly allege tortious conduct while treating the patients, and seek damages resulting from the providing of professional services. Furthermore, the tortious conduct, if it occurred, took place in the course of and as an inseparable part of the providing of professional services. Consequently, any damages would be those resulting from the providing of professional services by the insured. The claims are within the language of the insurance policy, and the policy contains no exclusion of coverage which would be applicable. Coverage is therefore afforded.

The Court went on to say, "The judgment of the trial court is supported by St. Paul Fire & Marine Insurance Co. v. Mitchell, 164 Ga.App. 215, 296 S.E.2d 126 (1982); Vigilant Insurance Co. v. Kambly, 114 Mich.App.

683, 319 N.W.2d 382 (1982); Zipkin v. Freeman, 436 S.W.2d 753 (Mo.1968). In each of these cases, with differing facts, the courts focused on patients injuries 'which resulted and [were] made possible only because they were professional services rendered during this time and others which should have been rendered but were not.' The courts found that the alleged conduct if it occurred (a question for the trier of fact), took place during the course of treatment, that the doctors did not treat the patients properly, and as a result, they were injured. The doctors' departure from standard practice during the course of treatment, their mishandling of treatment is the essence of the claim. The claims of Dr. Asbury's patients that he manipulated their clitoris while performing routine gynecological examinations, if true, was tortious conduct committed while providing professional services and covered by his insurance policy. Most of the cases cited to us by St. Paul are distinguishable because the tortious sexual abuse of the patient was not intertwined with and inseparable from the services provided." Asbury is cited with favor in St. Paul Fire & Marine Insurance Company v. Shernow, 222 Conn. 823, 610 A.2d 1281 (1992), in which the court held that when the medically negligent procedure is so inextricably intertwined and inseparable from the intentional conduct that serves as the basis for the separate claim of a sexual assault … that professional liability policies must, in such instances, extend coverage.

We are wholly in accord with the rulings in the above cases. Having determined that there is no factual issue involved we affirm the trial court's grant of defendant Pope's motion for summary judgment upon the issue of St. Paul's duty to defend.

■ We are at odds with the trial court judgment on the duty of St. Paul to indemnify the defendant, Torpoco. This issue is not appropriate for summary judgment. St. Paul's obligation to indemnify is a question for the jury. The correct rule is properly stated in American Policyholders' Ins. Co. v.

1. The Couch case was settled before it reached this Court.

*Cumberland Cold Storage Co.*, 373 A.2d 247 (Me.1977). In that case the court said, "It is accepted in the overwhelming majority of jurisdictions that the obligation of a liability insurance company to defend an action brought against the insured by a third party is to be determined *solely* by the allegations contained in the complaint in that action.... Accordingly, if the allegations in the underlying tort actions in the instant case are within the risk insured against and there is a potential basis for recovery, then American must defend ..., regardless of the actual facts or the ultimate grounds on which ... liability to the injured parties may be predicated.... In any event, the pleading test for determination of the duty to defend is based exclusively on the facts as *alleged* rather than on the facts as they actually are.... Courts have frequently observed that the duty to defend is broader than the duty to pay or indemnify.... Whereas the duty to defend depends only upon the facts as alleged to be, the duty to indemnify, i.e., ultimate liability, depends rather upon the true facts.... Thus it is not uncommon that an insurer will have a duty to defend based on the allegations in the complaint, yet have no subsequent duty to indemnify the insured. This situation will occur when trial on the merits of the underlying claim proves the facts to be otherwise then as alleged, and judgment is entered on a ground dissimilar to the one contained in the complaint.... The record in this case does not permit a determination that, as a matter of law, American must indemnify [the defendant]. It is entirely possible that an adverse judgment may be entered against [defendant] which American would not be obligated to satisfy. There is therefore a genuine issue as to a material fact; in such a case, summary judgment is improper. (Citation of authorities omitted)."

■ St. Paul's argument that the public policy of Tennessee should forbid insurance coverage for acts such as those alleged by the defendant Pope is without merit. We subscribe to the defendant Torpoco's argument in response to that assertion. The overriding public policy applicable in this case is that ambiguities in insurance policies are to be construed against the drafter of the policy. St. Paul had every opportunity to exclude from coverage any type of conduct it wished to exclude. St. Paul's contention that intentional acts are not covered by the policy is dissipated by the fact that there is no exclusion in the policy for intentional acts. The acts of physicians in malpractice cases are often intentional, yet they still give rise to malpractice claims. The public, as patients, necessarily place considerable trust in doctors for their highly specialized knowledge of the healing arts. This trust is engendered by the influence over the patient unique to the medical profession. Medical doctors, if unscrupulous, are in an extraordinary position to abuse any weakness or vulnerability in their patients. The large number of decisions cited by the parties in this case makes it obvious that sexual misconduct toward a patient is not so uncommon an event in the field of medicine that such an act would be unforeseeable to a malpractice provider.

■ Concern has been expressed in varying degrees by all of the parties that if the finder of fact renders a general verdict against Dr. Torpoco, the basis of liability will remain unknown and therefore the issue of duty to indemnify will remain undetermined. Rule 49 of the Tenn.R.Civ.P. provides for the return of special verdicts under the direction of the trial court. Application of this procedure should allay any concern which may exist in regard to the verdict.

The judgment's of the trial court and the Court of Appeals are affirmed as to the duty to defend. The judgment granting summary judgment on the issue of indemnity is overruled and reversed. The case is remanded to the trial court for further proceedings consistent with this opinion. Costs are assessed equally against St. Paul Fire & Marine Insurance Company and Dr. Jesus Ortiz Torpoco.

REID, C.J., and DROWOTA and ANDERSON, JJ., concur.

DAUGHTREY, J., not participating.