AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Plaintiff/Respondent,

v.

James TICKLE, Defendant/Appellant,

and

James T. Kemper, and Jennifer T. Kemper, and Reliable Rain, Inc., Defendants.

No. ED 81084.

Missouri Court of Appeals, Eastern District, Division Two.

Feb. 18, 2003.

---

John D. Anderson, Herman Praszkier, John J. Page, Anderson & Associates, St. Louis, MO, for appellant.

Lawrence F. Hartstein, Hartstein & Bleisch, P.C., St. Louis, MO, for respondent.

Leland C. Smith, II, St. Charles, MO, Robert J. Wulff, Amelung, Wulff & Willenbrock, St. Louis, MO, for defendants.

KATHIANNE KNAUP CRANE, Judge.

Employee appeals from a judgment entered in favor of insurer declaring, in part, that employee was not a "temporary worker" as that term was defined in employer's commercial general liability insurance policy. On appeal, employee claims that the trial court erred because the policy's definition of "temporary worker" is ambiguous, he was a "temporary worker" under the policy, and the bodily injury he incurred while working for employer was therefore covered. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, American Family Mutual Insurance Company ("American Family"), issued a Business Key Policy providing commercial general liability coverage ("the CGL policy") to defendant, James T. Kemper d/b/a ATO Irrigation Service, which was effective from February 5, 2000 to February 5, 2001.

In the CGL policy, American Family provided bodily injury and property damage liability coverage for:

> those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which th[e] insurance does not apply . . .

The CGL policy excluded coverage of an employer's liability for "bodily injury" to an "employee" of the insured "arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business."

The CGL policy defined "employee," to include "leased workers," but not "temporary workers":

> 5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

It further defined "leased worker" to exclude "temporary worker":

> 10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

Finally, it defined "temporary worker":

> 19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

Mr. Tickle was an individual who periodically sought and obtained employment from Mr. Kemper during periods when Mr. Tickle was laid off from his regular employment. On February 11, 2000 Mr. Tickle was installing piping for an in-ground watering system for Mr. Kemper. An employee of Reliable Rain, Inc. was operating a transit trenching machine. The drilling bit became entangled in landscaping fabric, which then wrapped and twisted around Mr. Tickle's left arm and hand, causing the limb to be severed. Mr. Tickle filed a lawsuit against Reliable Rain, Inc., and Mr. Kemper, making claims under the CGL policy, as well as a homeowner's policy Mr. Kemper and Jennifer T. Kemper had purchased from American Family. Mr. and Mrs. Kemper requested that American Family provide their defense. American Family then filed a declaratory judgment action against Mr. Tickle, Mr. Kemper, individually and d/b/a ATO Irrigation Service, Mrs. Kemper, and Reliable Rain, Inc.[1]

American Family asserted that the CGL policy exclusions applied because Mr. Tickle was an employee of Mr. Kemper d/b/a ATO Irrigation Service at the time of the injury. American Family asked the court to declare that it had no obligation to defend Mr. Kemper in the lawsuit filed by Mr. Tickle, or to pay compensatory damages and medical expenses for which Mr. Kemper could be held liable. The parties agreed to submit the declaratory judgment action to the court on oral argument, depositions, and memoranda of law.

The trial court entered judgment in favor of American Family. It found that Mr. Tickle was an employee of ATO Irrigation Service hired by Mr. Kemper and was performing the normal, routine, and necessary duties of Mr. Kemper's business at the time of injury. The trial court further found that Mr. Tickle was not a "person furnished to meet seasonal or short term work load conditions." The court ordered that American Family had no obligation under either policy to defend Mr. or Mrs. Kemper or to pay damages and medical expenses sustained by Mr. Tickle.

## DISCUSSION

On appeal, Mr. Tickle challenges that part of the judgment relating to the CGL policy. Mr. Tickle concedes that he was not "furnished" to Mr. Kemper to meet seasonal or short-term workload conditions. However, he maintains that the definition of "temporary worker" in the policy was vague and ambiguous and could be interpreted to include someone who works to meet seasonal or short-term workload conditions, but who is not "furnished" to the employer.

### 1. Standard of Review

In a court-tried declaratory judgment action, the interpretation of an insurance policy is a question of law. *Union Pac. R. Co. v. American Fam. Mut.*, 987 S.W.2d 340, 342 (Mo.App.1998). We do not defer to the trial court's interpretation but rather engage in *de novo* review. *National Union v. City of St. Louis*, 947 S.W.2d 505, 506 (Mo.App.1997).

An insurer's duty to defend a suit against its insured is determined by the language of the policy and the allegations contained in the plaintiff's petition in the underlying case. *American States Ins. Co. v. Mathis*, 974 S.W.2d 647, 649 (Mo.App.1998). The insurer has the burden of demonstrating the applicability of any exclusions on which it relies. *Id.*

---

1. Reliable Rain, Inc. was dismissed on appeal.

Unless an ambiguity exists, we must enforce the policy as written, and give the language of the policy its ordinary meaning. *Krombach v. Mayflower Ins. Co., Ltd.,* 827 S.W.2d 208, 210 (Mo. banc 1992). An ambiguity exists when the language in a policy is reasonably and fairly open to different constructions. *Id.* We read the provisions of the insurance policy in the context of the policy as a whole and give the language used its ordinary meaning unless another meaning is plainly intended. *Columbia Mut. Ins. Co. v. Schauf,* 967 S.W.2d 74, 77 (Mo. banc 1998). An ambiguity exists where there is duplicity, indistinctness, or uncertainty in the meaning of the language and where the language is reasonably open to different constructions. *Martin v. U.S. Fidelity and Guar. Co.,* 996 S.W.2d 506, 508 (Mo. banc 1999). The fact that the parties disagree on the meaning of an insurance policy does not create an ambiguity. *Eagle Boats v. Continental Ins. Co.,* 968 S.W.2d 734, 736 (Mo.App.1998).

2. *Background: Commercial General Liability Policies and Workers' Compensation Law*

An employer obtains a liability policy "to cover *its liability to the public* for negligence of its agents, servants and employees under the doctrine of respondeat superior." *Ward v. Curry,* 341 S.W.2d 830, 837 (Mo.1960). This is because compliance with the provisions of the Workers' Compensation Act constitutes the full extent of an employer's liability for any injuries sustained by its employees, direct or statutory, arising out of and in the course of their employment. The intent of commercial general liability policies is to protect against the unpredictable and potentially unlimited liability that can result from accidents causing injury to other persons or their property. *Schauf,* 967 S.W.2d at 77. A commercial general liability policy does not cover the insured's obligations under a workers' compensation policy or bodily injury to the insured's employees arising out of the employment. II Mo. INSURANCE PRACTICE Section 10.11 (Mo. Bar 4th ed.1995).[2] *See also* 9 COUCH ON INSURANCE Section 129:3 (3d ed.1997). "The primary purpose of an employee exclusion clause is to draw a sharp line between employees and members of the general public." *Id.*

"In Missouri, the courts consistently turn to the Workmen's Compensation Act in determining the meaning of the word 'employee' as used in exclusion clauses of liability insurance policies ..." *Ward,* 341 S.W.2d at 836. *See also American States Ins. Co. v. Broeckelman,* 957 S.W.2d 461, 466 (Mo.App.1997); *Auto Owners Mut. Ins. Co. v. Wieners,* 791 S.W.2d 751, 756 (Mo.App.1990); *Brock v. Firemens Fund of America Ins. Co.,* 637 S.W.2d 824, 829 (Mo.App.1982); *Turnage v. State Farmers Mut. Tor. Ins. Co. of Mo.,* 388 S.W.2d 342, 346 (Mo.App.1965). "Employee" is defined in section 287.020.1 and is extended to statutory employment in section 287.040.1.

In 1992, the legislature added section 287.282 to the Workers' Compensation Law to codify an employer's obligation with respect to workers' compensation coverage for employees leased from a staffing firm. Section 287.282 RSMo 2000 provides that an employer who obtains part of its workforce from another entity through an employee leasing arrangement may be required to obtain workers' compensation coverage for those employees and allows the director of insurance to establish standards and procedures for coverage of employees obtained by an employer in an

**2.** The policy in this case specifically excludes any obligations of the insured under workers' compensation laws as well as bodily injury to employees.

"employee leasing agreement." Subsection 3 of the statute excludes temporary help service arrangements from employee leasing arrangements:

> 3. For purposes of this section, the term **"employee leasing arrangement"** shall not include temporary help service arrangements which assign their employees to clients for a finite period of time to support or supplement the client's work force in special work situations, such as employee absences, temporary skill shortages and seasonal workloads, and which are not knowingly utilized as a mechanism of depriving one or more insurers of premiums which otherwise is properly payable.

Section 287.282.3.

The Code of State Regulations, 20 CSR 500–6.800, implements this statute to ensure that an employer who leases some or all of its employees properly obtains workers' compensation for those employees and that the appropriate premium is paid. The Employee Leasing Company Endorsement set out in this regulation specifically excludes workers' compensation coverage for a temporary worker, who is defined as "a worker who is furnished to an entity to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions." 20 CSR 500–6, Ex. C. This is identical to the CGL policy's definition of "temporary worker."

The CGL policy containing the employee exclusion and policy definition are on a form copyrighted by the Insurance Services Office, Inc. (ISO) Until 1993, the ISO standard form CGL policy did not define "employee." In 1993, the definitions of "employee," "leased employee" and "temporary worker" were added to the ISO standard form CGL policy to cover the non-traditional employment relationship where a client company is using the services of employees of a staffing company.

JACK P. GIBSON, ET AL., INT'L RISK MGMT. INST., INC., 1 COMMERCIAL LIABILITY INSURANCE, Sections V.L. .9–.10, .22, .50 (Jan. 2002). This addition included "leased employees" within the definition of "employee" but excluded "temporary workers." The CGL policy in this case contains the same definitions as appear in the ISO standard form CGL policy.

### 3. *Analysis*

 Mr. Tickle contends that the CGL policy definition of "temporary worker" is ambiguous because it is unclear whether the verb "is furnished" applies to a person who meets seasonal or short-term workload conditions. Mr. Tickle suggests that the phrase "is furnished" only applies to those persons who substitute for a permanent employee and not to those who meet seasonal or short-term workload conditions. To determine if the application of "is furnished" to the succeeding clause and phrase in the sentence is ambiguous, we examine the syntax and arrangement of the sentence. *State Farm v. Chambers*, 860 S.W.2d 19, 20 (Mo.App.1993).

The structure of the sentence defining "temporary worker" indicates that the clause "who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions" is a subordinate adjective clause modifying "person". *See* DIANA HACKER, THE BEDFORD HANDBOOK 758–60 (5th ed.1998). Within this clause, the parallel infinitive phrases "to substitute for a permanent employee on leave" and "to meet seasonal or short-term workload conditions" both function as adverbs or verbal modifiers that modify the verb "is furnished" and both restrict the persons covered under this definition. *Id.* at 763–64, 766. Because these phrases are separated by the word "or," a coordinating conjunction that is ordinarily used to connect

grammatically equal elements, they equally modify the verb "is furnished." *Id.* at 740. It is grammatically impossible to read the phrase "to meet seasonal or short-term workload conditions" without the verb "is furnished" because the phrase has no meaning without the antecedent verb it modifies. There is no ambiguity in the relationship of "is furnished" to its modifier "to meet seasonal or short-term workload conditions."

Because Mr. Tickle admits that he was not "furnished" to Mr. Kemper, he was not a "temporary worker" as that term was defined in the policy. The trial court did not err in declaring that Mr. Tickle was an employee.

The judgment of the trial court is affirmed.

PAUL J. SIMON, P.J. and GARY M. GAERTNER, SR., J. concur.