**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 07a0497n.06
Filed: July 13, 2007
No. 06-5524

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

GENERAL AGENTS INSURANCE
COMPANY OF AMERICA, INC.,
     *Plaintiff, Appellee*

                v.

MANDRILL CORPORATION, INC.
     *Defendant, Appellant*
_____/

On Appeal from the United States District
Court for the Eastern District of Tennessee,
Southern Division

**BEFORE: KENNEDY, BATCHELDER, and CLAY, Circuit Judges.**

**KENNEDY, Circuit Judge.** Mandrill Corporation, Inc. ("Mandrill") appeals the district court's grant of summary judgment to defendant General Agents Insurance Company, Inc. ("GAINSCO") in this declaratory judgment action. The court held that GAINSCO did not have a duty to defend Mandrill under its Commercial General Liability Policy ("CGL Policy") in two suits for personal injury and one for wrongful death brought by persons on the Mandrill payroll who were injured or killed while performing work for Mandrill. Mandrill argues, *inter alia*, that these persons were not "employees" or were potentially not "employees" but rather were "temporary workers" as those terms are defined by the CGL Policy carried by Mandrill and supplied by GAINSCO and therefore not within the employer exclusion of the CGL Policy. We **AFFIRM** in part and **REVERSE** in part.

**BACKGROUND**

Mandrill contracted to perform demolition work at two sites in Chattanooga, Tennessee, work which it began on October 9, 2000. This was the only work engaged in by defendant in the fall and winter of 2000-01. While the project was ongoing, on February 5, 2001, for reasons that are not relevant here, a wall collapsed injuring two workers (Johnny Mathis and Robert Wynn) and killing a third (Scott Wheeler) (collectively, the "Laborers"). During the course of the demolition work, Mandrill paid the Laborers and the other workers on the site in cash, on an hourly basis, generally weekly, and did not withhold or pay social security taxes. JA at 289.

When the wall fell Mandrill did not have workers' compensation insurance coverage. Pursuant to a court order, its workers' compensation insurance policy had been cancelled effective February 4, 2001 because the insurer providing the coverage had become insolvent and was in the process of liquidation. Mandrill had found new workers' compensation coverage from another company, effective when the premium was actually paid. The premium was not paid until February 7, 2001, two days after the accident.

After the wall fell the Laborers filed separate complaints in state court seeking damages from Mandrill for their injuries on a variety of theories including workers' compensation (required to be carried by Tennessee statute) and, because there was no workers' compensation coverage for personal injuries and wrongful death, common law negligence. Each of the three complaints alleged that the Laborer was an employee of Mandrill, although one complaint, Wynn's, was amended after this declaratory judgment action was filed to allege that plaintiff Wynn was an independent contractor.

Mandrill requested that GAINSCO defend it against these suits and indemnify it for any damages sustained pursuant to Mandrill's CGL Policy. GAINSCO refused, however, because

2

the CGL Policy excluded from coverage "bodily injury" sustained by "employees" of Mandrill in the course of their duties for Mandrill. The CGL Policy's employer exclusion provides, in relevant part:

> SECTION I – COVERAGES
> . . .
> 2. Exclusions. This insurance does not apply to:
> . . .
> e. Employer's Liability
> "Bodily injury" to: (1) An "employee" of the insured arising out of and in the course of:
> (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business . . ..
>
> SECTION V– DEFINITIONS
> . . .
> 5. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."
> . . .
> 9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties relating to the conduct of your business. "Leased worker" does not include a "temporary worker."
> . . .
> 18. "Temporary worker" means a person who is furnished to [the insured] to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

JA at 112, 118-21. The CGL Policy also excludes claims based on contractual liability. CGL Policies with employer liability exclusions are an example of a fractured insurance industry, in which one insurer will underwrite coverage of certain potential liabilities and others will underwrite other distinct liabilities.

On November 20, 2002, GAINSCO filed this declaratory judgment action to determine whether it had a duty to defend and indemnify Mandrill for the injuries sustained by the Laborers. After a certain amount of discovery, on December 1, 2003 Mandrill moved for summary

3

judgment on all claims based on the language of the CGL Policy including its exclusions. GAINSCO filed a brief in opposition that relied on the policy exclusions and the allegations in the injured and deceased Laborers' complaints that they were employees. It argued that they did not fall within the definition of temporary workers under the CGL Policy. On February 19, 2004, the court granted summary judgment to GAINSCO with regard to the duty to defend because the complaints filed by the Laborers alleged that they were employees, employees were excluded from the CGL Policy's coverage, and the duty to defend was triggered by the language of the complaint. The court, however, found that summary judgment was inappropriate at that point with regard to the duty to indemnify, because there was a genuine issue of material fact whether the Laborers should be categorized as employees or temporary workers and so reserved its decision with respect to whether the Laborers were temporary workers as defined in the CGL Policy.

Subsequently, on October 14, 2005, GAINSCO moved for summary judgment with regard to indemnification because the Laborers' claims against Mandrill had been settled (with Mandrill not contributing to the settlement) and thus Mandrill had no further liability exposure. Mandrill, on November 3, 2005, moved for relief from the district court's earlier order finding no duty to defend and requested its attorneys' fees and costs incurred in its defense. It did not contest GAINSCO's motion for summary judgment based on mootness of the duty to indemnify and that issue was not appealed. On March 16, 2006, the district court granted GAINSCO's motion and denied Mandrill's. This timely appeal followed.

**ANALYSIS**

*I. Standard of Review*

4

A district court's grant of summary judgment is reviewed *de novo*. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999). Summary judgment is proper if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II. Duty to Defend

In Tennessee, as "in the overwhelming majority of jurisdictions[,] the obligation of a liability insurance company to defend an action brought against the insured by a third party is to be determined solely by the allegations in the complaint in that action." *Saint Paul Fire and Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994) (quoting *Am. Policyholders' Ins. Co. v. Cumberland Cold Storage Co.*, 373 A.2d 247, 249 (Me.1977)). "If even one of the allegations [in the Laborer's complaint] is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy." *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996). This so-called "pleadings test" does not depend on the actual facts on which the claimants base their claim, but only the allegations in the pleadings. *St. Paul Fire*, 879 S.W.2d at 835. In addition, Tennessee case law requires that insurance policies be construed against the drafting insurance company and in favor of the insured. *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991). Finally, however:

> It is the duty of the Court, where there is no ambiguity, to take the ordinary meaning of the words used, favoring neither party in their construction. Creation of an ambiguity where none exists is not authorized by the rule requiring construction of the language of an insurance policy most strongly against the insurance company.

*Drexel*, 933 S.W.2d at 477 (internal citations and quotation marks omitted).

**a. Employer's Exclusion**

As noted above, the CGL Policy does not require GAINSCO to defend Mandrill if the claims against Mandrill are for bodily injury to "employees" arising out of and in the course of either their employment with Mandrill or their duties in the conduct of Mandrill's business. JA at 112-13. Mandrill does not contest that the Laborers were injured in the conduct of its business. The CGL Policy's definition of "employee," however, does not include "temporary workers," JA at 119, which are defined as "person[s] furnished to [Mandrill] to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." JA at 121.

The district court based its entire decision denying any duty to defend on the allegations in the Laborers' complaints that they were "employees":

> The Mathis and Wheeler complaints explicitly allege the injured workers were employees. These allegations fall squarely within the employer's liability exclusion. . . . In his amended complaint Wynn alleged he was an independent contractor rather than an employee . . .. There is no provision in the policy to prevent bodily injury to an independent contractor from being treated as bodily injury to an employee. . . . Relying on the facts as they are alleged in the underlying complaints, the Court concludes [GAINSCO] does not have a duty to defend the underlying claims against Mandrill.

Dist. Ct. Mem. Op. (February 19, 2004) at 11-12; JA at 295-96.

The allegation of "employee" status in a complaint, however, could *potentially* have a different meaning than that in the CGL Policy. For example, Laborer Robert Wynn's original complaint alleged that he was an "employee of the defendant[ ] under the scope and meaning of the Tennessee Workers' Compensation Statutes." JA at 214. An employee, under those statutes, "includes every person . . . in the service of an employer," Tenn. Code Ann. § 50-6-102(10)(A), which is a broader definition than that in the CGL Policy that could include certain "temporary workers." In addition, and perhaps more poignantly, the district court found that there was "a

6

genuine issue of material fact whether the underlying claimants were employees or temporary workers under the [CGL Policy]." Dist. Ct. Mem. Op. (February 19, 2004) at 14. That holding is inconsistent with the district court's holding that no duty to defend was triggered by the complaints. The district court's holding – that GAINSCO could potentially be liable for the damages claimed if there were temporary employees – would necessarily trigger a duty to defend. In sum, the pleadings mere use of the word "employee" is not sufficient to invoke the employer's exclusion under the policy if the policy is construed to cover some subclass of temporary employee in which they could fall. Therefore, the basis of the district court's decision is flawed: To determine whether the exclusion applies it is necessary to construe what can be included in the exception to the exclusion by the words and definitions of "temporary workers." In addition, we must examine the district court's failure to address Laborer Robert Wynn's amended complaint that alleged that he was an independent contractor.

### b. Robert Wynn's Amended Complaint

As noted above, Laborer Wynn amended his complaint to allege that he was an independent contractor rather than an employee of Mandrill. An elaboration on the procedural history of this case is in order: As noted, GAINSCO filed this declaratory judgment action on November 20, 2002. On March 14, 2003 Laborer Wynn moved in state court to amend his complaint and purportedly attached a copy of the amended complaint to the motion. That motion was granted by the state court on May 16, 2003. Wynn filed an answer in this declaratory judgment action on April 10, 2003 to which he attached a copy of this amended complaint and the motion to amend he had filed in state court. We do not know when GAINSCO received notice of the amendment but it received notice at the latest when Wynn filed his answer in the

7

declaratory judgment action.

The district court stated that,

[w]hile certain areas of the law place importance on the distinction between an employee and an independent contractor, the [CGL Policy] does not. The policy contemplates an employee of Mandrill is one who may be injured arising out of being employed by Mandrill or performing duties related to Mandrill's business. . . . There is no provision in the policy to prevent bodily injury to an independent contractor from being treated as bodily injury to an employee.

Dist. Ct. Mem. at 12 (Feb. 19, 2004). This analysis was in error. The proper inquiry is not whether a provision in the CGL Policy prevents a reading against the interest of the insured. Rather, any ambiguity in an insurance policy in Tennessee is resolved in favor of the insured. As the district court notes, there are many areas of the law where a distinction exists between independent contractors and employees. Because the CGL Policy arguably covers the independent contractor claim in Wynn's amended complaint, GAINSCO had the duty to defend Mandrill on Wynn's claim from the date GAINSCO was served with a copy of the amended complaint until it became apparent that coverage did not exist under the CGL Policy. In response to Mandrill's motion for summary judgment, GAINSCO filed a response supported by affidavits that established that the Laborers were employees of Mandrill and were not temporary workers. It asked for summary judgment in its favor. The district court granted it summary judgment in an order dated February 19, 2004, although not on that basis. Since it was entitled to summary judgment on the basis that it had established that the three Laborers were employees as defined in the CGL Policy, the motion was properly granted even if for the wrong reason.[1] Thus,

---

[1]While Tennessee law mandates that the duty to defend attaches based on the allegations in the complaint, that duty ends when the insurer ascertains that the actual facts fall within an exclusion. *See* 22-136 Appleman on Insurance § 136.7[C][1] (describing insurers right to bring a declaratory judgment action and the effect of such action). Based on the record before us, it is clear

8

GAINSCO cannot be liable for any cost of defense subsequent to that date. On remand, the district court should consider both when GAINSCO was first notified of Wynn's amended complaint, and whether that notification fulfilled the notice requirement under the CGL Policy.

**c. Temporary Workers Exception – Mathis and Wheeler Complaints**

As to the two remaining laborers, Johnny Mathis and Ronald Wheeler, we affirm the district court's judgment. While Judge Clay would affirm because, "[t]he complaints filed by Mathis and Wheeler's Estate each clearly allege that [they] were 'employees,'" *post* at 2, and thus no further inquiry is necessary, I conclude, for the reasons above, that we should inquire whether they were "temporary workers." I conclude that they were not.

The employer exclusion and the definitions of temporary and leased workers appear on a form copyrighted by the Insurance Services Office, Inc. ("ISO"). As a result, these same definitions appear on many CGL policies across the country. The ISO added these definitions to this standard form in 1993. *See American Family Mutual Ins. Co. v. Tickle*, 99 S.W.3d 25, 30 (Mo. Ct. App. 2003). The temporary worker definition was apparently added to address a distinction made by several states' workers' compensation statutes. *See Brown v. Ind. Ins. Co.*, 184 S.W.3d 528, 538 (Ky. 2005). These statutes distinguish between leased employees, who are considered to be employees of the lessee company; and temporary employees, who are considered to remain employees of the temporary staffing agency. *Id.*; *see, e.g.,* KY. REV. STAT. ANN. § 342.615 (2006). The CGL Policy's definition of employee, therefore, is designed to reflect this distinction as it exists in some states.

---

that Wynn was not an independent contractor, but rather was an employee and thus his suit was excluded from the CGL Policy's coverage.

Courts that have considered the language have been mixed. The majority of these courts have held that the phrase "furnished to" in the definition unambiguously requires the involvement of a third party, such as a temporary staffing agency, that supplies the worker to the insured employer. *See, e.g., AMCO Ins. Co. v. Dorpinghaus*, 2007 U.S. Dist. LEXIS 2440, at *14-15 (D. Minn. Jan. 11, 2007); *Nautilus Ins. Co. v. Gardner*, No. 04-1858, 2005 U.S. Dist. LEXIS 4423 at *6-7 (E.D. Pa. Mar. 21, 2005); *Brown*, 184 S.W.3d at 537; *Monticello Ins. Co. v. Dion*, 836 N.E.2d 1112, 1115 (Mass. App. Ct. 2005); *Nationwide Mut. Ins. Co. v. Allen*, 83 A.2d 1047, 1055 (Conn. App. Ct. 2004); *Tickle*, 99 S.W.3d at 30. A minority of courts, however, have held that the phrase "furnished to," nowhere defined by the standard ISO CGL form, creates an ambiguity and thus have sent the issue to a factfinder to divine the parties' intentions. *See, e.g., Bituminous Cas. Corp. v. Mike Ross, Inc.*, 413 F. Supp. 2d 740, 745 (N.D. W. Va. 2006); *Am. Family Mut. Ins. Co. v. As One, Inc.*, 189 S.W.3d 194, 198 (Mo. Ct. App. 2006); *Ayers v. C&D Gen. Contractors*, 237 F. Supp. 2d 764, 768-69 (W.D. Ky. 2002).

The majority position is based on a combination of grammatical analysis of the definitions, *Tickle*, 99 S.W.3d at 30, and a recognition of the workers' compensation statutes that provoked their inclusion in the standard ISO form, *Brown*, 184 S.W.3d at 537-40. Courts in jurisdictions in which the workers' compensation statutes do not recognize the temporary/leased worker distinction have likewise held that the exception does not create an ambiguity, but rather held that the "furnished to" language unambiguously requires that a third party "employment agency, manpower service provider or a[ ] similar service," be involved in supplying the worker.[2]

---

[2]Temporary agencies may sometimes provide temporary employees as well as permanent or quasi-permanent employees.

*Allen*, 83 Conn. App. at 540.

This distinction between leased and temporary workers does not exist in the Tennessee Workers' Compensation Statute, TENN. CODE ANN. § 50-6-101 *et seq.* Nor have the Tennessee courts ruled on the interpretation of the standard CGL language.

I am persuaded that the majority position is correct and that Tennessee would adopt this position. The minority position argues that the provision is ambiguous because it can be read two ways:

> (a) "Temporary worker" means a person (1) who is furnished to [the insured] to substitute for a permanent "employee" or (2) to meet seasonal or short-term workload conditions.

> (b) "Temporary worker" means a person who is furnished to [the insured] (1) to substitute for a permanent "employee" or (2) to meet seasonal or short-term workload conditions.

That is, these courts have questioned whether "furnished to" applies to both substitute workers and seasonal workers, or just to substitutes. If "furnished to" applies only to substitutes, then it is relevant whether the Laborers are for "seasonal or short-term workload conditions," a phrase that this minority of courts has also found ambiguous.[3]

Although at least one judge has found this grammatical analysis "extremely confusing" and that such analysis "certainly indicates that ambiguity exists," *Brown*, 184 S.W.3d at 543

---

[3]Should I so inquire, I would be inclined to find that the Laborers were not "temporary workers." This demolition was the only job that Mandrill had at the time and the Laborers had been on the job, consistently, for months. To hold that the Laborers were "temporary workers," therefore, would effectively hold that *everyone* on the Mandrill payroll was a "temporary worker" and read the employer's exclusion out of the CGL Policy.

11

(Wintersheimer, J., dissenting), I disagree. The first interpretation does not make grammatical sense and, as such, the second is the only reasonable interpretation of the contract. Therefore, "furnished to" must apply to both substitute workers and those needed to accommodate short-term fluctuations in workload conditions.

In addition, "furnished to" requires the involvement of a third party. That is, to say that a worker furnishes himself to the employer, as some courts have held, *see, e.g., As One*, 189 S.W.3d at 198-99, is erroneous because it effectively reads the phrase "furnished to" out of the CGL Policy.

> If [the court] adopted [the minority of courts'] interpretation – that is, if [the court] agreed that a worker could furnish himself to an insured simply by showing up to work – then *every* worker would be "furnished to [ ]" [the insured] for purposes of the policy, and the phrase would be meaningless. There would be no difference between the definition of "temporary worker" that actually appears in the policy – "a person who is furnished to you . . . to meet seasonal or short-term working conditions" – and a definition of "temporary worker" that completely omitted the furnished-to-you qualifier – e.g., "a person who meets seasonal or short-term working conditions."

*Dorpinghaus*, 2007 U.S. Dist. LEXIS 2440, at *16 (emphasis in original) (citing *Monticello*, 836 N.E.2d at 1115).

There is not a scintilla of evidence in the record to indicate that any of the Laborers were "furnished to" Mandrill by any third party. As such, Wheeler and Mathis were not temporary workers; their status was as employees. Therefore, while the reasoning of the district court in its February 19, 2004 order denying summary judgment with regard to indemnification was erroneous, the court's final judgment was not. Because the pleadings nowhere indicate that these workers were "furnished to" Mandrill and the true facts, as revealed by subsequent discovery, confirmed that they were not, GAINSCO was not obligated either to defend or to indemnify by

12

the CGL Policy.

**d. Mandrill's Other Arguments**

Mandrill's other arguments for reversal are more easily dealt with:

*1. Broader Duty to Defend is Triggered by Subsequent Indemnification*

Mandrill argues that the duty to defend is broader and completely encapsulates the duty to indemnify and that GAINSCO in fact indemnified by contributing to the settlement of the Laborers' claims. We need not decide that issue because Mandrill's premise, that GAINSCO actually did indemnify it, is flawed. As the district court noted, GAINSCO argues that it did not indemnify Mandrill, but rather paid the "nuisance value" to make the suit go away. Dist. Ct. Mem. (March 16, 2006) at 9; JA at 56. In addition, holding that a payment on a contested insurance claim triggered a duty to defend would discourage settlement, which we and other courts are loathe to do. As there is no indication that GAINSCO admitted a duty to indemnify Mandrill, Mandrill's argument fails.

*2. CGL Policy Does Not Provide for Apportionment of Coverage*

Mandrill next argues that the CGL Policy does not provide for partial coverage of defense costs where the insurer elects to voluntarily settle claims. Since GAINSCO did voluntarily settle, argues Mandrill, they are also liable for the entire amount of costs. We accept the district court's statement that the "duty to defend is subject to the exclusions section of the policy . . .. Mandrill's argument based solely on the coverage section of the policy is faulty because it fails to acknowledge the exclusions to that coverage." Dist. Ct. Mem. (February 16, 2004) at 10; JA at 57.

*3. Quantum Meruit*

13

Mandrill next makes a claim under the equitable theory of quantum meruit. As the district court noted, quantum meruit is a remedy available in Tennessee when there is no existing, enforceable contract governing payment for the services rendered. Since the CGL Policy is an existing, enforceable contract governing such payment, quantum meruit is unavailable.

*4. Waiver*

Mandrill argues that GAINSCO, "essentially waived its right to assert any defenses against coverage," BLUE at 27, citing *Allstate Ins. Co. v. Dixon*, 1991 Tenn. App. LEXIS 386 (Tenn. Ct. App. 1991) (unpublished), for the proposition that, "[i]n order for an insurance company to proceed with actual payment of a claim, the payment must be made pursuant to a reservation of rights or nonwaiver agreement that specifically reserves such rights in the event of actual payment of the claim." *Id*. at *15-16. Mandrill goes further, however, and claims that if "no such reservation was made contemporaneously with the settlement of the underlying claim," BLUE at 26, then GAINSCO waived its defenses.

Mandrill's reliance on contemporaneity is misplaced. The court in *Dixon* further stated:

> Since Allstate only reserved its rights while it was defending the underlying action then it waived its right to deny coverage when it exceeded the point of defending the action and actually paid the underlying claim. As far as this record reveals, Allstate did not reserve the right to pay a settlement and still retain the right to deny coverage. We simply cannot extend these agreements beyond their exact terms.

*Id*. at *16. Therefore, the court did not find significant the *timing* of the waiver, but rather the specific rights reserved. With this proper understanding of *Dixon*, Mandrill's argument begins to crumble. GAINSCO reservation of rights in this case stated:

> Nothing which this insurer may have done or may do hereafter in connection with the investigation or defense of any matters arising out of this incident, or in connection with the handling of any claim or litigation through the courts, including

14

> investigation and/or negotiations for settlement, shall be construed or held as a waiver of any of the rights or defenses of this insurer under the [CGL Policy].

Dist. Ct. Mem. (March 16, 2006) at 4; JA at 51. A settlement payment is the natural result of "negotiations for settlement," and so the waiver covers such a payment.

## CONCLUSION

For the above reasons, the judgment of the district court is **AFFIRMED** with respect to GAINSCO's duty to defend in the Mathis and Wheeler suits, **AFFIRMED** insofar as it denied Mandrill's 60(b) motion for relief from judgment, **REVERSED** with respect to the dismissal of GAINSCO's duty to defend in the Wynn suit, and **REMANDED** for further proceedings. On remand, the district court is instructed to determine whether and to what extent Mandrill incurred attorneys' fees and costs in defense of the Wynn suit from the time GAINSCO received notice of the action, pursuant to the terms of the CGL Policy, until GAINSCO established sufficient facts to prove that Wynn was not an independent contractor but rather was an employee.

**ALICE M. BATCHELDER, concurring in part and dissenting in part.** I would reverse the grant of summary judgment, regarding the duty to defend, for all three plaintiffs. Under the insurance policy and under Tennessee law, Gainsco had a duty to defend the suit until it established sufficient facts to prove otherwise. The burden was on Gainsco to disprove coverage, which it did not do under the present circumstances; it merely asserted that Mandrill failed to produce evidence that the laborers were temporary workers. This reverses the burden of proof and ignores the extremely low threshold necessary for Mandrill to receive legal defense coverage.

There was a duty to defend, based on the pleadings, even if there was no duty to indemnify, based on the record. "The duty to defend is broader than the duty to indemnify because the duty to defend is based on the facts alleged, while the duty to indemnify is based upon the facts found by the trier of fact." *Travelers Indem. Co. v. Moore & Assoc., Inc.*, 216 S.W.3d 302, 306 (Tenn. 2007).

> [I]t is not uncommon that an insurer will have a duty to defend based on the allegations in the complaint, yet have no subsequent duty to indemnify the insured. This situation will occur when trial on the merits of the underlying claim proves the facts to be otherwise then as alleged, and judgment is entered on a ground dissimilar to the one contained in the complaint.

*St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994) (citation omitted). In such a case, "[a]n insurer's duty to defend is triggered when its policy arguably, as opposed to distinctly, covers the claims being made, and [the duty to defend] continues until the facts and the law establish that the claimed loss is not covered." *Standard Fire Ins. Co. v. Chester-O'Donley & Assocs.*, 972 S.W.2d 1, 11 (Tenn. Ct. App. 1998) (citations omitted). Thus, Tennessee law demands that the duty to defend be determined by the language of the underlying complaint.

We must be careful, however, not to take this concept too literally. It appears unreasonable to me that the duty to defend should depend entirely on semantics, particularly when the controlling document is necessarily authored by a third party without any legitimate interest in the tension

between an insurer and an insured.[4]   Under too rigid and formalistic of an approach, the employer

would receive no legal defense coverage if the injured (and litigious) worker, while drafting her

complaint, chose to label herself an "employee" or "temporary worker," while that same (albeit more

fortunate) employer would receive coverage if an identically-situated laborer chose to label herself

an "independent contractor," or chose not to label herself at all.  This drastic difference would result

even if the substance of the two complaints was otherwise identical.  Such an outcome is

unjustifiable (even nonsensical) and defies the ordinary concept of notice pleading.  Therefore, I

cannot conclude that the Tennessee Supreme Court would be likely to adopt such a position.

As one Tennessee state court of appeals decision explains, the rule on the duty to defend,

which favors the allegations in the complaint rather than the actual facts of the case, was designed

to protect the insured, not to limit the insurer's coverage based on particular magic words:

> It may be that the general rule . . . [i.e., that the allegations of the complaint control
> the duty to defend] originated from cases where the allegations of the complaint
> brought the action within the coverage[;] and the insurer, rather than the insured,
> sought to go behind the complaint and show that, in fact, the basis of the suit was
> beyond the scope of the policy.  To permit the insurer to go behind the allegations of
> the complaint would tend to relieve the insurer of the duty of defending groundless
> actions in derogation of the duty imposed by the policy.
>
> To apply the same rule to the insured would seem to violate the principal that in
> construing and applying insurance policies the apparent object and intent of the
> parties must be kept in mind.  The purpose of the insured in this case under
> defendant's policy was to obtain protection against the expense of defending suits,
> whether meritorious or groundless, within the area and scope of liability covered by
> the policy.  *To make this benefit conclusively and in all cases dependent upon the*
> *allegations of the complaint over which the insured can exercise no control would*
> *leave the protection offered by the policy to happenstance and, in many cases,*

---

[4]Rare is the plaintiff with access to the specific terms of the employer's general liability insurance policy at the time the complaint is drafted.  Thus, the injured worker, when drafting her complaint, cannot be expected to know whether she should label herself "leased worker" rather than "temporary worker," nor should the mere label make any more difference than if she labeled herself "independent contractor" rather than "employee."

17

*amount to nothing short of a windfall for the insurer.* Seldom would a pleader invite demurrer by charging the defendant with liability for the act of an independent contractor.

*Dempster Bros., Inc. v. U.S. Fidelity & Guar. Co.*, 388 S.W.2d 153, 155 (Tenn. Ct. App. 1964) (emphasis added). I find this explanation both practical and persuasive.

Therefore, I conclude that, under the insurance policy and under Tennessee law (both the prevailing law and the foreseeable Tennessee Supreme Court reasoning), Gainsco had a duty to defend the suit until such time as it established sufficient facts to prove otherwise. That is, the burden was on Gainsco to disprove coverage, which it did not do under the present circumstances; Gainsco merely asserted that Mandrill had failed to produce evidence that the laborers were temporary workers. This reverses the burden of proof and ignores the extremely low threshold necessary for Mandrill to receive legal defense coverage. The grant of summary judgment should be reversed and remanded for a determination of Mandrill's right to recover costs expended.

**CLAY, Circuit Judge, concurring in part and dissenting in part.**  I concur in the judgment, but part company with the lead opinion's reasoning in several respects.  Additionally, I disagree with the lead opinion's instructions to the district court on remand.  Lamentably, inasmuch as each opinion issued from this panel today diverges, we are providing no clear instructions to the district court on remand.

First, the lead opinion correctly concludes that Plaintiff had no duty to defend in the suits brought against Defendant by Johnny Mathis ("Mathis") and Ronald Wheeler's Estate ("Wheeler's Estate") under the terms of its commercial general liability policy (hereinafter "the Policy").  However, the lead opinion engages in a rather protracted and, in my view, unnecessary discussion of the meaning of "furnished to" in the Policy's definition of "temporary worker."  This discussion apparently follows from the lead opinion's speculation that "[t]he allegation of 'employee' status in a complaint . . . could potentially have a different meaning than that in the CGL Policy," and from the lead opinion's conflation of the standards triggering the duty to indemnify as opposed to the duty to defend.  (Maj. Op. at 6-7)  Like the lead opinion, I find that Plaintiff had no duty to defend the suits brought by Mathis and Wheeler's Estate, but on different grounds.

"An insurer's duty to defend is triggered when its policy *arguably*, as opposed to distinctly, covers the claims being made, and continues until the facts and the law establish that the claimed loss is not covered." *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 11 (Tenn. Ct. App. 1998) (internal citations omitted); *see also Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996).  To mark the boundaries of an insurer's duty to defend, "courts typically begin and end their analysis with the four corners of the complaint." *Smith & Nephew Inc. v. Fed. Ins. Co.*, 113 F. App'x 99, 102 (6th Cir. 2004) (unpublished) (citing *St. Paul*

19

*Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 834-35 (Tenn. 1994)). Thus, to determine whether the insurer has a duty to defend, we look to the policy itself and to the complaints filed in underlying suits against the insured.

As the lead opinion notes, the Employer's Liability provision in the Policy excludes coverage for:

> "Bodily injury" to:
> (1)     An "employee" of the insured arising out of and in the course of:
>         (a)     Employment by the insured; or
>         (b)     Performing duties related to the conduct of the insured's business;
>
> . . .
>
> This exclusion applies:
> (1)     Whether the insured may be liable as an employer or in any other capacity; and
> (2)     To any obligation to share damages with or repay someone else who must pay damages because of the injury. . . .

(J.A. at 32) By its terms, the Policy defines "employee" to "include[] a 'leased worker,'" but not "a 'temporary worker.'" (*Id*. at 40) The Policy further defines "temporary worker" as "a person who is furnished to [the company] to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." (*Id*. at 42)

The complaints filed by Mathis and Wheeler's Estate each clearly allege that Mathis and Wheeler, respectively, were "employees" of Defendant working at the time of the incident. Notably, they do not allege that Mathis and Wheeler were "temporary workers," that they were "furnished to" Defendant as substitutes for permanent employees on leave, or that they were hired on a seasonal or short-term basis. From the face of their complaints, then, it is "plain" that Mathis and Wheeler's Estate "fail[ed] to state facts that bring the[ir] case[s] within or potentially within the policy's coverage." *See Drexel Chem. Co.*, 933 S.W.2d at 480. In my view, the allegations on the face of

20

the complaints filed by Mathis and Wheeler's Estate simply do not save their suits from the Policy's Employer's Liability provision, and raise no question as to whether Mathis and Wheeler fall within the "temporary worker" exception to the definition of "employee" in the Policy. In so concluding, I do not find it necessary to resolve any ambiguity – whether real or imagined – in the meaning of "furnished to" in the Policy's definition of "temporary worker."

Second, the lead opinion employs faulty logic in characterizing the district court's holding – that "a genuine issue of material fact [existed as to] whether the underlying claimants were employees or temporary workers" under the Policy – as incongruous with the court's conclusion that the underlying complaints triggered no duty to defend. (*See* Maj. Op. at 6-7) What is more, with no detailed discussion of Plaintiff's duty to indemnify, the lead opinion later summarily concludes that because Wheeler and Mathis were employees, and not temporary workers, "the reasoning of the district court in its February 19, 2004 order denying summary judgment with regard to indemnification was in error, [but] the court's final judgment was not." (Maj. Op. at 12)

In my view, the question of Plaintiff's duty to indemnify is not properly before this Court. At any rate, there is no inherent tension between the district court's holdings that questions of fact remained on the duty to indemnify, but that Plaintiff had no duty to defend. Although the duty to defend is defined by the allegations on the face of the plaintiff's complaint, the duty to indemnify requires more searching inquiry into the underlying state of affairs. *See Torpoco*, 879 S.W.2d at 835 (citation omitted). That is, the duty to indemnify depends on the actual state of the facts – here, whether Mathis, Wheeler and Wynn were "employees" within the Policy's terms or not. Genuine issues of material fact remained when the district court denied summary judgment on the issue of Plaintiff's duty to indemnify. These issues of fact remained unresolved when the parties settled the

21

underlying claims, and the district court declined to revisit the question of indemnification when it subsequently denied Defendant's Rule 60(b) motion for relief from judgment. I would not revisit the issue of Plaintiff's duty to indemnify here.

Having set forth my concerns, I nevertheless concur in the judgment. Like the lead opinion, I would affirm with respect to Plaintiff's duty to defend in the Mathis and Wheeler suits, affirm the district court's denial of Defendant's Rule 60(b) motion for relief from judgment, reverse with respect to Plaintiff's duty to defend in the Wynn suit, and remand for further proceedings. However, I disagree with the lead opinion's instructions to the district court, and reiterate that this panel has not adopted a single and uniform mandate to guide the district court. On remand, I would instruct the district court to determine the nature and extent of Plaintiff's duty to defend in the Wynn suit in light of Wynn's amended complaint and the facts on the record and, correspondingly, to calculate the amount of costs and fees due and owing Defendant for the defense of the Wynn suit during that time.