# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
April 17, 2013 Session

## LAFAYETTE INSURANCE COMPANY v. JERRY S. ROBERTS, ET AL.

**Direct Appeal from the Circuit Court for Dyer County**
**No. 2010CV69      William B. Acree, Judge**

---

**No. W2012-02038-COA-R3-CV - Filed July 31, 2013**

---

In this appeal we must determine whether an injured worker was an "employee" or a "temporary worker" within the meaning of a commercial general liability insurance policy. The policy excludes coverage for injuries to the insureds' employees, but it covers injuries to "temporary workers" who are not employees, as that term is defined in the policy. The trial court granted summary judgment to the worker upon concluding that he was a "temporary worker," and therefore covered under the policy, and it denied the insurer's motion for summary judgment. We find that the worker was not a "temporary worker" as that term is defined by the insurance policy. Therefore, the trial court erred in granting the worker's motion for summary judgment and denying the insurer's motion. We reverse and remand for entry of an order granting summary judgment to the insurer.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., joined and HOLLY M. KIRBY, J., joined in results only.

Christopher H. Crain, Memphis, Tennessee, for the appellant, Lafayette Insurance Company

Dean P. Dedmon, W. Lewis Jenkins, Jr., Sean P. Day, Dyersburg, Tennessee, for the appellee, Bobby Burns

John M. Lannom, James S. Wilder, III, Dyersburg, TN, for the appellees, Jerry Roberts, Diane G. Roberts, and James P. Roberts, Jr.

**OPINION**

**I. FACTS & PROCEDURAL HISTORY**

Jerry Roberts and his wife Diane Roberts, along with Jerry's brother James Roberts, Jr. (collectively, "the Roberts") own a commercial building in Dyersburg that is operated as a Family Dollar store. The Roberts engaged Bobby Burns to assist with recoating the roof of the building in April 2009. Mr. Burns fell from the roof on April 26, 2009, and suffered devastating injuries. On April 23, 2010, Mr. Burns filed a lawsuit against the Roberts seeking to recover for his personal injuries.[1] Mr. Burns' complaint alleged that he was an employee of the Roberts defendants, working at the direction of Jerry Roberts, and paid by the hour. Mr. Burns asserted that he was not in the business of roofing or roofing repair and that he was not an independent contractor. Mr. Burns alleged that he sustained his injuries during the course of his employment, and he alleged that the Roberts failed to provide him with a safe working environment and failed to provide safety equipment or other devices to prevent his fall. He sought $7 million in compensatory damages.

Lafayette Insurance Company ("Insurer") had provided a commercial general liability ("CGL") insurance policy to the Roberts defendants that was in effect on the date of the injury. The Roberts requested a defense and indemnification under the CGL policy of insurance concerning the underlying lawsuit filed by Mr. Burns. Insurer provided a defense to the Roberts defendants under a reservation of rights and filed the instant lawsuit seeking a declaratory judgment that it had no duty to defend the lawsuit filed by Mr. Burns and that the CGL policy did not afford coverage for the claims asserted. The insuring agreement of the Roberts' CGL policy provided, in relevant part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

_____

[1] The complaint also named as a defendant Family Dollar Stores of Tennessee, Inc., but this entity is not involved with this appeal.

The policy contained the following "Exclusions," as relevant here:

This insurance does not apply to:

. . .

**d. Workers Compensation And Similar Laws**
Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**
"Bodily injury" to:
(1)     An "employee" of the insured arising out of and in the course of:
        a.     Employment by the insured; or
        b.     Performing duties related to the conduct of the insured's business; . . .
        . . .
This exclusion applies whether the insured may be liable as an employer or in any other capacity . . . .

The policy contained the following relevant definitions:

5.     "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."
. . .
10.    "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."
. . .
19.    "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

In sum, the policy did not provide coverage for injuries to "employees" or "leased workers," but it did provide coverage for injuries to "temporary workers," as that term was defined in the policy.

Insurer's complaint for declaratory judgment alleged that because the underlying lawsuit filed by Mr. Burns sought damages arising out of his employment, then Mr. Burns' claims and damages were specifically excluded from coverage under the policy's employer

liability exclusion. Insurer filed a motion for summary judgment contending that Mr. Burns was an employee of the Roberts, and not a temporary worker, and therefore the policy provided no coverage for his bodily injuries as an employee of the insured. For purposes of summary judgment, Insurer conceded that Mr. Burns was hired for one project only – repairing the roof. Nevertheless, Insurer argued that Mr. Burns did not meet the policy's definition of a covered "temporary worker" as "a person *who is furnished to you* to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." (emphasis added). Insurer argued that "[t]he majority of the courts that have considered the very same definition of 'temporary worker' hold that the phrase 'furnish to' unambiguously requires the involvement of a third party, such as a temporary staffing agency, that supplies the worker to the insured employer." Insurer submitted the deposition testimony of Mr. Burns in which he stated that he was not hired "through any third party staffing agency, leasing agency, [or] anything like that, in connection with this work [he] performed on the roof at Family Dollar."[2] Because Mr. Burns was not "furnished to" the Roberts by any third party, Insurer argued, he was not a "temporary worker" within the meaning of the CGL policy.

In response to the motion for summary judgment, Mr. Burns argued that the policy either did not require the involvement of a third party, or at the very least, was ambiguous as to whether a third party must have furnished the worker. Mr. Burns insisted that the simple use of the word "furnish" did not necessarily imply the involvement of a third party, and, he claimed, it was possible for the Roberts to "furnish" themselves with a worker. Mr. Burns pointed out that the policy's definition of "leased worker" specifically stated, "a person leased to you *by a labor leasing firm*," while the definition of "temporary worker" simply said, "a person who is furnished to you," without specifying who was to "furnish" the temporary worker. Mr. Burns acknowledged that "conflicting authority exists," but he claimed that "some courts have held that the 'temporary worker' [definition] either contains an ambiguity that represents a question of fact or permits coverage for short-term employees who respond directly to an employer's solicitation of employment" without being furnished by a third party. Thus, Mr. Burns argued that the "better reasoned" approach was to hold that the definition of temporary worker was ambiguous and to be construed against Insurer. Mr. Burns also filed his own motion for summary judgment, claiming that "summary judgment should be granted in favor of coverage in this matter," either because he clearly met the definition of a temporary worker, or because the policy was ambiguous as to whether he was a temporary worker.

---

[2] The Roberts also admitted that "Bobby Burns was not furnished to Jerry Roberts by any third party, staffing, or employment agency in connection with the work performed by him on the roof of the building."

On August 9, 2012, the trial court entered an order granting summary judgment to Mr. Burns and denying the motion for summary judgment filed by Insurer. The court explained its findings, in pertinent part, as follows:

> The complaint filed by Burns in the underlying tort action and the discovery taken to date in this declaratory judgment action shows that Burns was employed by the Roberts defendants for a discrete task (i.e., recoating the roof of the building located at 303 East Court Street, Dyersburg, Tennessee) and on a temporary basis.
>
> . . .
>
> Burns was not furnished to Roberts by any third party, staffing or employment agency in connection with the work performed by him on the roof of the building.
>
> The issue in the motions for summary judgment and in this suit is the employment status of Burns. If he was a temporary worker within the meaning of the policy, then Lafayette has a duty to defend the Roberts in the tort action and to provide coverage to them if a judgment is rendered against them. If he was not a temporary employee, then there is no duty to defend nor is there any coverage.
>
> It is undisputed that Burns was employed by the Roberts to make certain repairs to the roof of a building owned by them, and, upon completion of that work, his employment would end. Obviously, Burns was a temporary worker. However, Lafayette argues that under the definition of a temporary worker in the policy, a temporary worker must be furnished by someone else. The policy does not say this. As applied to this case, the policy states that a temporary worker is a person furnished to meet a short term workload condition. If Lafayette intended to require the temporary worker to be furnished by a third party, it could have included additional language in the policy as it did in defining "leased worker".

Based on these findings, the trial court held that Insurer had a duty to defend the Roberts in the underlying tort case filed by Mr. Burns, and to provide coverage to the extent of the policy limits should a judgment be awarded against them. Insurer timely filed a notice of appeal.

## II. ISSUES PRESENTED

On appeal, Insurer argues that the trial court erred in granting Mr. Burns' motion for summary judgment and in denying the motion for summary judgment filed by Insurer. For the following reasons, we reverse the decision of the circuit court and remand for entry of

an order granting summary judgment to Insurer.

## III.  ANALYSIS

"A declaratory judgment proceeding provides an appropriate vehicle for deciding [insurance] coverage questions." ***Standard Fire Ins. Co. v. Chester-O'Donley & Associates, Inc.***, 972 S.W.2d 1, 5 (Tenn. Ct. App. 1998). "Issues involving an insurance policy's coverage and an insurance company's duty to defend require 'the interpretation of the insurance policy in light of claims asserted against the insured.'" ***Sulphuric Acid Trading Co., Inc. v. Greenwich Ins. Co.***, 211 S.W.3d 243, 248 (Tenn. Ct. App. 2006) (quoting *Allstate Ins. Co. v. Jordan*, 16 S.W.3d 777, 779 (Tenn. Ct. App. 1999)). These are matters of law that may be resolved by summary judgment when there are no genuine issues as to any material fact. ***Travelers Indem. Co. of America v. Moore & Associates, Inc.***, 216 S.W.3d 302, 305 (Tenn. 2007). This Court reviews a trial court's interpretation of contract language de novo with no presumption of correctness. ***Id.*** (citing *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)).

An insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery. ***Travelers Indem. Co.***, 216 S.W.3d at 305. Therefore, the central issue in this declaratory judgment action is whether Mr. Burns' complaint alleges damages that are within the risk covered by the CGL policy that Insurer issued to the Roberts. *See **id.***

Commercial general liability or "CGL" policies have been used since 1940. ***Travelers Indem. Co.***, 216 S.W.3d at 305. "Most CGLs are written on standardized forms developed by an association of domestic property and casualty insurers known as the Insurance Services Offices." ***Id.*** (citing *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 772, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993)). CGL policies are "designed to protect an insured against certain losses arising out of business operations." ***Id.*** (citing *Chester–O'Donley*, 972 S.W.2d at 6). "In order to prevent overlapping coverage and to minimize gaps in coverage, they combine several historic forms of coverage into an integrated whole with coverage being broadly stated in a single insuring agreement and exclusions circumscribing the broad grant of coverage." ***Chester-O'Donley***, 972 S.W.2d at 6. However, "'CGL policies are not 'all-risk' policies; rather, these policies provide the insured with coverage up to the policy limits for damages for which the insured becomes liable as a result of tort liability to a third party.'" ***Insura Property & Cas. Ins. Co. v. Ashe***, No. M2002-00374-COA-R3-CV, 2003 WL 253255, at *2 (Tenn. Ct. App. 2003) (quoting *Am. Indem. Co. v. Foy Trailer Rentals, Inc.*, No. W2000-00397-COA-R3-CV, 2000 WL 1839131, at *3 (Tenn. Ct. App. Nov. 28, 2000)).

Injuries to employees are typically excluded from coverage, as the expectation is that the employer will have in place workers' compensation insurance. ***Monticello Ins. Co. v. Dion***, 836 N.E.2d 1112, 1113 (Mass. App. Ct. 2005) (citing 9 Couch, Insurance § 129.7 (3d ed. 1997)); *see also **AMCO Ins. Co. v. Dorpinghaus***, No. 05-1296, 2007 WL 313280, at *2 (D. Minn. Jan. 12, 2007) ("The reason that policies such as [these] exclude injuries to employees is that such injuries are supposed to be covered by worker's compensation insurance, not by CGL insurance."). Both "automobile and CGL insurers exclude from their policies those risks that are supposed to be covered by their insured's workers' compensation insurance policies so as to avoid both double coverage and double premiums." ***Brown v. Indiana Ins. Co.***, 184 S.W.3d 528, 537 (Ky. 2005); ***Erie Ins. Exchange v. Columbia Nat. Ins. Co.***, No. M2012-00331-COA-R3-CV, 2013 WL 395982, at *6 (Tenn. Ct. App. Jan. 30, 2013) (noting that auto policies and CGL policies are created to cover different risks, and bring cost and efficiency benefits by eliminating the duplicate premiums that would be paid were the risks not separated); *21-132 Appleman on Insurance 2d* § 132.5 (2002) ("The basic purpose of Workers' Compensation and Employers' Liability Exclusions 'd' and 'e' is to prevent the general liability insurance policy from being converted into a workers' compensation and employer's liability policy.")

Once again, the Roberts' CGL policy did not provide coverage for bodily injury to employees of the insured, but injuries to temporary workers were covered. The complaint filed by Mr. Burns alleged that he was an "employee" of the Roberts and not an independent contractor. However, there were no facts alleged in the complaint that would indicate whether Mr. Burns met the definition of a "temporary worker," which, according to the policy, is not included within the definition of an "employee." As a result, it is not definitively clear, solely from reading the complaint, whether Mr. Burns' claims would be covered by the CGL policy. *See **General Agents Ins. Co. of America, Inc. v. Mandrill Corp., Inc.***, 243 Fed.Appx. 961, 965 (6th Cir. (Tenn.) 2007) (noting that an allegation of "employee" status in a complaint could potentially have a different meaning than that in a CGL Policy, and therefore the use of the term in the complaint was not conclusive as to whether the plaintiff-worker was a "temporary worker"). An insurer "cannot refuse to defend unless 'it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or *potentially* within the policy's coverage.'" ***York v. Vulcan Materials Co.***, 63 S.W.3d 384, 388 (Tenn. Ct. App. 2001) (quoting *Drexel Chemical Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471 (Tenn. Ct. App. 1996)) (emphasis added).

> 'Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy. Stated differently, in case of doubt as to whether or not the allegations of the complaint against the insured state a cause of action

within the coverage of their liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.'

*Southland Mall, LLC v. Valor Sec. Services, Inc.*, No. W2003-03066-COA-R3-CV, 2005 WL 762616, at *4 (Tenn. Ct. App. Apr. 4, 2005) (quoting *Dempster Brothers, Inc. v. United States Fid. & Guar. Co.*, 388 S.W.2d 153, 156 (Tenn. Ct. App. 1964)); *see also Marsh Furniture Co. v. Pennsylvania Mfrs. Ass'n Ins. Co.*, No. 02A01-9505-CV-00103, 1996 WL 328713, at *3 (Tenn. Ct. App. Jun. 17, 1996) ("Where the allegations of the complaint against the insured are ambiguous and there is doubt as to whether they state a cause of action sufficient under the policy to compel the insurer to defend, the doubt should be resolved in favor of the insured.") "Thus, in the insurance context, the duty to defend is triggered when the language of the complaint states a cause of action that *may* be covered under the policy." *Southland Mall, LLC*, 2005 WL 762616, at *4. Because the Roberts' CGL policy arguably covered the claims asserted by Mr. Burns, Insurer had a duty to defend until it established that the claims were not covered. *See Erie Ins. Exchange*, 2013 WL 395982, at *7 (quoting *Chester-O'Donley*, 972 S.W.2d at 11) ("An insurer's duty to defend is triggered when its policy arguably, as opposed to distinctly, covers the claims being made, and continues until the facts and the law establish that the claimed loss is not covered.")

As noted above, Insurer provided a defense to the Roberts defendants under a reservation of rights and filed the instant lawsuit seeking a declaratory judgment that it had no duty to defend the lawsuit filed by Mr. Burns, and that the CGL policy did not afford coverage for the claims asserted, because the claims did not, in fact, fall within the coverage of the policy because Mr. Burns was an employee and not a temporary worker.[3] Insurer relied on Mr. Burns' deposition testimony that he was hired directly by Jerry Roberts and that he was not provided to the Roberts by any type of temporary staffing agency, employment agency, or the like. The Roberts admitted this fact as well. Insurer argued that a person does not meet the definition of a "temporary worker," regardless of the duration of the employment, if the person is hired directly by the insured and not "furnished to" the insured by some third party. In response, Mr. Burns and the Roberts argued that the word "furnish" does not require the involvement of a third party, and that it was permissible for the Roberts

---

[3] "[I]nsurance companies may protect themselves by filing motions for declaratory judgment requesting a court to decide whether coverage applies or by filing a 'reservation of rights,' which allows them to proceed with the defense but withdraw if it becomes evident that there is no duty to defend." *Forrest Const., Inc. v. Cincinnati Ins. Co.*, 703 F.3d 359, 363 (6th Cir. (Tenn.) 2013); *see, e.g.*, *Metropolitan Property and Cas. Ins. Co. v. Buckner*, 302 S.W.3d 288, 289-90 (Tenn. Ct. App. 2009); *Tennessee Farmers Mut. Ins. Co. v. Cherry*, No. W2007-00342-COA-R3-CV, 2008 WL 933479 (Tenn. Ct. App. Apr. 7, 2008) *perm. app. denied* (Tenn. Oct. 27, 2008).

to "furnish" themselves with a temporary worker, under the terms of the policy.

The issue, then, is whether Mr. Burns was an "employee" of the Roberts at the time of the accident, or a "temporary worker," as that term is contemplated in the CGL policy. We have been unable to locate any Tennessee authority discussing the distinction between "employees" and "temporary workers" in comprehensive general liability policies such as the one at issue in the present case, and the parties have not directed us to any. The pertinent definitions bear repeating here:

> 5. "Employee" includes a "leased worker." "Employee" does not include a "temporary worker."
>
> . . .
>
> 10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."
>
> . . .
>
> 19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

We review the policy language as we would a contract. *See Travelers Indem. Co.*, 216 S.W.3d at 305-306 ("Our interpretation of insurance contracts, such as the CGL in this case, is governed by the same rules of construction used to interpret other contracts.") In the absence of fraud or mistake, the policy should be interpreted as written, and its terms should be given their natural and ordinary meaning. *Chester-O'Donley*, 972 S.W.2d at 7. The policy should be construed as a whole, in a reasonable and logical manner. *Id.* "No single clause in a contract is to be viewed in isolation; rather, the contract is to be 'viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illuminate another.'" *Frizzell Constr. Co., Inc. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 85 (Tenn. 1999) (citing *Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.*, 690 S.W.2d 231, 237 (Tenn. 1985)).

Reading the aforementioned definitions together, in the context of the entire policy, we conclude that the definition of "temporary worker" does require the involvement of some third party who "furnish[es]" the temporary worker "to" the insured. We do not dispute the assertion by Mr. Burns and the Roberts that, in the abstract, it is possible for one to "furnish," supply, or provide oneself with a product or service. However, we are not simply interpreting the word "furnish." "[T]o properly construe an agreement, we are not allowed to take words in isolation, but must construe the instrument as a whole." *Pitt v. Tyree Org.*

***Ltd.***, 90 S.W.3d 244, 253 (Tenn. Ct. App. 2002). "'A word or expression in the contract may, standing alone, be capable of two meanings,'" and yet the contract may be unambiguous when read in context. ***Adkins v. Bluegrass Estates, Inc.***, 360 S.W.3d 404, 412-13 (Tenn. Ct. App. 2011) (quoting *Fisher v. Revell*, 343 S.W.3d 776 (Tenn. Ct. App. 2009)).

> 'Thus, in determining whether or not there is such an ambiguity as calls for interpretation, the whole instrument must be considered, and not an isolated part, such as a single sentence or paragraph. The language in a contract must be construed in the context of that instrument as a whole, and in the circumstances of that case, and cannot be found to be ambiguous in the abstract.'

***Id.*** (quoting *Fisher*, 343 S.W.3d at 776). Here, a "temporary worker" means "a person *who is furnished to you* to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." (emphasis added). This definition suggests the involvement of a third party who provides the temporary worker to the insured. If one could furnish oneself with a temporary worker within the meaning of the policy, there would be no need for including the phrase "who is furnished to you." The definition could just as easily read, "a person who substitutes for a permanent employee or who meets seasonal or short-term workload conditions." Any worker who substituted for a permanent employee on leave or who met seasonal demands or short-term workload conditions would satisfy the definition of a temporary worker, and there would effectively be no "furnished to you" requirement. Contracts must be construed, as far as is reasonable, so as to give effect to every term. ***Vantage Technology, LLC v. Cross***, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999) (citing *Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996)). Insurer's interpretation is the only one that gives meaning to all of the words of the policy definition.

The "temporary worker" definition at issue here has been construed on numerous occasions by courts in other jurisdictions, and the vast majority of the courts have concluded that the phrase "who is furnished to you" requires third party involvement.[4] *See, e.g.*,

---

[4] As the Court explained in ***Mandrill Corp., Inc.***, 243 Fed.Appx. at 967 (6th Cir. (Tenn.) 2007):

The employer exclusion and the definitions of temporary and leased workers appear on a form copyrighted by the Insurance Services Office, Inc. ("ISO"). As a result, these same definitions appear on many CGL policies across the country. The ISO added these definitions to this standard form in 1993. See *American Family Mutual Ins. Co. v. Tickle*, 99 S.W.3d 25, 30 (Mo. Ct. App. 2003). The temporary worker definition was apparently added to address a distinction made by several states' workers' compensation statutes. See

(continued...)

*Northland Cas. Co. v. Meeks*, 540 F.3d 869, 875 (8th Cir. (Ark.) 2008) ("we find that the Policy's use of the term 'furnished to' is unambiguous and clearly requires the involvement of a third party in furnishing a worker either 'to substitute for a permanent 'employee' on leave' or 'to meet seasonal or short-term workload conditions.'"); *General Agents Ins. Co. of America, Inc. v. Mandrill Corp., Inc.*, 243 Fed.Appx. 961, 968 (6th Cir. (Tenn.) 2007) ("'furnished to' requires the involvement of a third party. That is, to say that a worker furnishes himself to the employer . . . is erroneous because it effectively reads the phrase 'furnished to' out of the CGL Policy."); *see also Parra v. Markel Intern. Ins. Co. Ltd.*, 300 Fed.Appx. 317, 318-319 (5th Cir. (Tex.) 2008); *AMCO Ins. Co. v. Dorpinghaus*, No. 05-1296, 2007 WL 313280, at *4-5 (D. Minn. Jan. 11, 2007); *Nautilus Ins. Co. v. Gardner*, No. 04-1858, 2005 WL 664358, at *2-3 (E.D. Pa. Mar. 21, 2005); *Carl's Italian Restaurant v. Truck Ins. Exchange*, 183 P.3d 636, 639 (Colo. App. 2007); *Nationwide Mut. Ins. Co. v. Allen*, 850 A.2d 1047, 1055 (Conn. App. 2004); *Brown v. Indiana Ins. Co.*, 184 S.W.3d 528, 537-541 (Ky. 2005); *Monticello Ins. Co. v. Dion*, 836 N.E.2d 1112, 1113 (Mass. App. Ct. 2005); *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720-721 (Mo. 2008); *Rhiner v. Red Shield Ins. Co.*, 208 P.3d 1043, 1045 (Or. App. 2009); *Borntreger v. Smith*, 811 N.W.2d 447, 448-451 (Wis. Ct. App. 2012).

On appeal, Mr. Burns and the Roberts submit that the "minority" rule is the better reasoned approach. A few courts have held that the "temporary worker" definition is ambiguous. For example, in *Nick's Brick Oven Pizza, Inc. v. Excelsior Ins. Co.*, 877 N.Y.S.2d 359, 362, 61 A.D.3d 655, 657 (2009), a New York appellate court held that the definition is ambiguous because it "does not clearly define whether an individual who is hired to meet seasonal or short-term workload conditions must also be 'furnished' to the insured in order to qualify as a temporary worker, or whether only individuals hired to substitute for an employee on leave must be so 'furnished.'" Again, the definition provides that a temporary worker is "a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." So, in the New York court's view, the definition could be read in one of two ways:

(1)     a person who is furnished to you (a) to substitute for a permanent 'employee' on leave or (b) to meet seasonal or short-term workload conditions; or

---

[4](...continued)
*Brown v. Ind. Ins. Co.*, 184 S.W.3d 528, 538 (Ky. 2005). These statutes distinguish between leased employees, who are considered to be employees of the lessee company; and temporary employees, who are considered to remain employees of the temporary staffing agency. *Id.*; see, e.g., Ky. Rev. Stat. Ann. § 342.615 (2006). The CGL Policy's definition of employee, therefore, is designed to reflect this distinction as it exists in some states.

> (2)    a person (a) who is furnished to you to substitute for a permanent 'employee' on leave or (b) to meet seasonal or short-term workload conditions.

In effect, this interpretation of the policy permits it to be read as "a person . . . to meet seasonal or short-term workload conditions." This same conclusion was reached in ***Bituminous Cas. Corp. v. Mike Ross, Inc.***, 413 F.Supp.2d 740, 744-746 (N.D. W.Va. 2006), which is also cited on appeal by Mr. Burns and the Roberts. In that case, the Court concluded that "the definition's second-part can make grammatical sense when the words 'furnished to' are discarded. In that case, a temporary worker would be 1) a person furnished to the insured to substitute for a permanent employee for leave or 2) a person to meet seasonal demands and short-term workload conditions." ***Id.***

We find this to be a strained and unnatural reading of the policy language, and it has been rejected by other courts as well. The Missouri Court of Appeals provided a thorough grammatical analysis of the definition:

> The structure of the sentence defining "temporary worker" indicates that the clause "who is furnished to you to substitute for a permanent employee on leave or to meet seasonal or short-term workload conditions" is a subordinate adjective clause modifying "person". See Diana Hacker, The Bedford Handbook 758–60 (5th ed. 1998). Within this clause, the parallel infinitive phrases "to substitute for a permanent employee on leave" and "to meet seasonal or short-term workload conditions" both function as adverbs or verbal modifiers that modify the verb "is furnished" and both restrict the persons covered under this definition. *Id.* at 763–64, 766. Because these phrases are separated by the word "or," a coordinating conjunction that is ordinarily used to connect grammatically equal elements, they equally modify the verb "is furnished." *Id.* at 740. It is grammatically impossible to read the phrase "to meet seasonal or short-term workload conditions" without the verb "is furnished" because the phrase has no meaning without the antecedent verb it modifies. There is no ambiguity in the relationship of "is furnished" to its modifier "to meet seasonal or short-term workload conditions."

***American Family Mut. Ins. Co. v. Tickle***, 99 S.W.3d 25, 30-31 (Mo. Ct. App. E.D. 2003). The Court of Appeals of Wisconsin likewise explained,

> It is readily apparent that the definition is structured so that the 'furnished to you' language introduces two parallel clauses separated by 'or': '*furnished to you* to substitute for a permanent 'employee' on leave *or* to meet seasonal or

short-term workload conditions' (emphasis added). This structure leaves no doubt that the two individual clauses starting with the words 'to substitute' and 'to meet' are both modified by the 'furnished to you' lead-in language.

***Borntreger***, 811 N.W.2d at 449. The Court of Appeals for the Eighth Circuit similarly concluded that if the "furnished to you" language only applied to the first clause, "to substitute for a permanent employee," then "the 'temporary worker' definition would not make grammatical sense." ***Meeks***, 540 F.3d at 875; *see also* ***Rhiner***, 208 P.3d at 1045 (Or. App. 2009) ("The wording of the policy simply cannot reasonably be read to say that. It plainly and unambiguously provides that a temporary worker is 'a person who is furnished to you' either to substitute for a permanent employee or to meet seasonal or short-term workload conditions.")

In another case relied upon by Mr. Burns and the Roberts as representing the "minority rule," the United States District Court for the Western District of Kentucky, applying Kentucky law, found the term "furnished to you" to be "too ambiguous to be given a literal interpretation." ***Ayers v. C & D General Contractors***, 237 F.Supp.2d 764, 769 (W.D. Ky. 2002). The Court explained that it had "struggled unsuccessfully to find the logic" in distinguishing between temporary workers furnished by an employment agency and temporary workers who respond directly to a newspaper ad. The Court ultimately decided against a "literal interpretation" of the "furnished to you" language, stating, "[t]o give this phrase dispositive weight within the policy makes no sense whatsoever." The Court concluded that any employee who was hired to fill-in for a permanent employee on leave or to meet a short-term need was a "temporary worker." ***Id.*** After *Ayers* was decided, several other courts declined to follow its reasoning, including the Supreme Court of Kentucky. In ***Brown v. Indiana Ins. Co.***, 184 S.W.3d 528, 538 (Ky. 2005), the Kentucky Supreme Court explained that the Kentucky Workers' Compensation Act provides the "logic" for the distinction. It explained:

It is no coincidence that the definition of "temporary worker" in the [] policy mirrors the definition of "temporary worker" in KRS 342.615(1)(e). The statute explains why injuries to temporary workers are not included within the "employee" exclusion from the liability coverage of the automobile (or CGL) policy. For insurance purposes, the temporary worker remains the employee of the temporary help service that "furnished" the worker (rather than becoming an employee of the entity to which that worker is furnished). Thus, the temporary worker is covered under the temporary help service's workers' compensation insurance, not that of the entity to which the worker is furnished. Since the temporary worker is not the employee of the entity to which he or she is furnished, that entity's automobile and CGL policies except the

temporary worker from the definition of "employee." However, for that exception to apply, the worker must have been "furnished to" the entity by a temporary help service, thereby assuring that the temporary worker is covered by the workers' compensation insurance of the temporary help service. If the worker is not "furnished to" the entity by a temporary help service, that worker is simply the employee of that entity, and that worker is insured under that entity's workers' compensation insurance and excluded from coverage under its automobile and CGL policies.

*Id.* at 538. Other courts have also declined to follow the *Ayers* Court's reasoning, which effectively reads the "furnished to you" language out of the policy. *See, e.g.*, *Mandrill Corp., Inc.*, 243 Fed.Appx. at 967-68 (6th Cir. (Tenn.) 2007); *AMCO*, 2007 WL 313280, at *4-5 (D. Minn. Jan. 11, 2007).

Another case that has often been cited as following the minority rule is *American Family Mut. Ins. Co. v. As One, Inc.*, 189 S.W.3d 194, 197-199 (Mo. App. S.D. 2006), where the Court, like Mr. Burns and the Roberts, relied upon the dictionary definition of "furnish" and concluded that there was no requirement that a third party be involved to "furnish" the worker. However, the *As One* decision was overruled by Missouri Supreme Court in *Gavan v. Bituminous Cas. Corp.* 242 S.W.3d 718, 720-721 (Mo. 2008) (en banc). The Supreme Court of Missouri held that "the term 'furnished to,' in context and in its plain and ordinary meaning, is not ambiguous and necessarily implies that a third party has been involved in providing or supplying the worker to the insured." Any other interpretation would render the "furnished to" language meaningless, and allow a worker to "furnish himself" whenever convenient, the Court held. *Id.*

In sum, we find the cases cited by Mr. Burns and the Roberts to be unpersuasive, and we agree with those courts that have determined that "furnished to you" applies to both of the clauses that follow, and that third party involvement is required.

Mr. Burns and the Roberts also argue that a comparison of the policy's definition of "leased worker" with the definition of "temporary worker" demonstrates that a third party is not required to furnish a temporary worker:

10. "Leased worker" means a person *leased to you by a labor leasing firm* under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker."
. . .
19. "Temporary worker" means a person who is *furnished to you* to substitute

-14-

for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

(Emphasis added). They contend that because the definition of "leased worker" specifies the type of third party that must lease a leased worker, but it does not specify who must furnish a temporary worker, then anyone can furnish a temporary worker, including the insured itself. We are not persuaded. The definition of temporary worker still requires the person to be "furnished to you." A reasonable reading of the definition is that third party involvement is required. Moreover, this very same argument has been rejected by a number of other courts. The Court of Appeals for the Eighth Circuit explained,

> The Policy's definition of "leased worker" specifically states that a leased worker must be furnished by a labor leasing firm. Meeks and Harrell contend that if the Policy meant to require another party to furnish a "temporary worker," then the Policy would have specified that the temporary worker be furnished by such a third party. However, "just because one provision of an insurance policy refers to third-party involvement more explicitly than another provision of the same policy does not mean that third-party involvement is excluded from the latter provision." [*AMCO*, 2007 WL 313280] at *6. The distinction merely shows that the provisions contemplate differing degrees of specificity. *Id.* It does not eliminate the requirement that a "temporary worker" must still be furnished by a third party.

*Meeks*, 540 F.3d at 875-76. In sum, "The leased-worker provision requires the involvement of a particular type of third party (a leasing firm). The temporary-worker provision requires the involvement of *any* type of third party. But both provisions require third-party involvement." *AMCO*, 2007 WL 313280, at *6.

In conclusion, we find that the CGL policy does not provide coverage for the claims asserted by Mr. Burns, and Insurer has no duty to defend or to indemnify the Roberts for damages that may be awarded against them in Mr. Burns' lawsuit. Mr. Burns was an employee of the Roberts, not a temporary worker as that term was defined in the policy, and therefore his claims fall within the employee exclusion to the CGL policy. His complaint does not allege damages that are within the risk covered by the insurance contract.

We note briefly that Mr. Burns' brief on appeal contains a footnote in which he argues that there is a disputed issue of fact as to whether he would qualify as a "volunteer worker" as that term is defined in the CGL policy: "a person who is not your 'employee', and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their

work performed for you." Thus, he claims that this disputed fact would preclude the entry of summary judgment in favor of the Insurer even if the "temporary worker" issue did not. We disagree. We recognize that during discovery, Jerry Roberts testified that the parties had not settled on an amount as far as Mr. Burns' compensation. Mr. Roberts said that when he suggested $10 an hour, Mr. Burns responded "We'll talk about it." Mr. Roberts admitted that he intended to pay Mr. Burns something, but, he added, "I don't know what he had in mind." Mr. Burns, on the other hand, testified that the parties had agreed on $10 an hour. In any event, we find these facts immaterial because the duty to defend is to be determined based on the allegations of the underlying complaint. Here, the complaint alleged that Mr. Burns was an employee of the Roberts who was paid by the hour. These allegations would arguably encompass a "temporary worker," but they do not in any way suggest that Mr. Burns was a "volunteer worker" who simply donated his time. Therefore, there is no genuine issue of material fact with regard to Insurer's duty to defend that would preclude the entry of summary judgment in favor of Insurer. We also find that Mr. Burns failed to demonstrate a genuine issue of material fact regarding the duty to indemnify. It is undisputed that Jerry Roberts intended to pay Mr. Burns for his work, and it is likewise undisputed that Mr. Burns expected to be paid. Thus, Mr. Burns was not a "volunteer worker," but an "employee," whose injuries are not covered by the CGL policy.

## IV. CONCLUSION

For the aforementioned reasons, we reverse the decision of the circuit court and remand for entry of summary judgment in favor of Insurer. Costs of this appeal are taxed to the appellees, Jerry S. Roberts, Diane G. Roberts, James P. Roberts, Jr., and Bobby Burns, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.