IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 18, 2021 Session

## JORGE I. CALZADA, M.D. v. STATE VOLUNTEER MUTUAL INSURANCE COMPANY

**Appeal from the Chancery Court for Williamson County**
**No. 49527J   Deanna B. Johnson, Judge**

_____

**No. M2020-01697-COA-R3-CV**

_____

A doctor's professional liability insurer refused to insure him against claims brought against him by his former partners and investigations of him being conducted by state and federal agencies. The trial court found that the insurer was not required to provide coverage for the doctor against the claims or the investigations. For the reasons that follow, we vacate the trial court's judgment and remand for proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ANDY D. BENNETT and ARNOLD B. GOLDIN, JJ., joined.

John W. Peterson and Michael A. Malone, Nashville, Tennessee, and Jonathan Grant Brinson (pro hac vice), Phoenix, Arizona, for the appellant, Jorge I. Calzada, M.D.

L. Webb Campbell, II and Lauren Z. Curry, Nashville, Tennessee, for the appellee, State Volunteer Mutual Insurance Company.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

Jorge I. Calzada, M.D., ("Appellant") is a retinal surgeon who was formerly a shareholder of Charles Retina Institute, P.C. ("CRI"), along with Dr. Steven Charles and Dr. Stephen Huddleston. State Volunteer Mutual Insurance Company ("Appellee") has been Appellant's medical professional liability insurer since he began his medical practice in Tennessee in 2006. Two insurance policies that ran consecutively are discussed by the

parties in this case. Because the terms and conditions of the two policies are the same for the most part, the parties refer to them collectively as "the Policy," as will this Opinion. Specific portions of the Policy will be discussed as they become relevant in the Discussion section below.

Appellant filed a complaint against CRI, Dr. Charles, and Dr. Huddleston (as well as two LLCs not involved in this appeal) (together, the "CRI Defendants") in Shelby County Circuit Court, alleging, *inter alia*, fraud, breach of fiduciary duties, and tortious interference. The CRI Defendants filed counterclaims against Appellant. Appellant filed an amended complaint, and the CRI Defendants filed amended counterclaims ("the counterclaims"),[1] which included seven counts. The two counts at issue in this appeal are Counts V and VI, as stated below:

V[.]     Intentional and negligent damage to reputation

82. Defendants repeat their allegations in 1-82 above.

83. Dr. Charles is a world-renown retinal surgeon. He has performed surgeries in 25 countries. He has lectured in 51 countries. He has written a textbook for retinal ophthalmologists which is in five editions and six languages. He has created over 100 patents that have generated sales of medical devices in excess of $7 billion worldwide. He saves people's eyesight without regard to ability to pay. He is known as a compassionate genius.

84. Dr. Charles was the sole owner of CRI for many years. [Appellant] was the first co-shareholder Dr. Charles ever admitted.

85. [Appellant] was one of two shareholders, one of two directors, and President of CRI. He was a highly visible representative of CRI.

86. [Appellant] committed serious billing fraud.

87. [Appellant] had inappropriate sexual relations with women he was teaching and evaluating and with women in subordinate employment positions.

88. [Appellant's] many "protocol deviations" caused a pharmaceutical company to suspend CRI and commence an audit, which could result in the FDA publicly sanctioning CRI for incompetence.

---

[1] The parties agree that the amended counterclaims superseded the original counterclaims.

89. [Appellant's] intentionally-wrong and negligently-wrong conduct has damaged CRI's pristine reputation for world-class excellence.

90. The amount of damages will be proven at trial.

VI[.] Indemnification for malpractice and improper billing.

91. Defendants repeat their allegations in 1-91 above.

92. Since February 6, 2019, Defendants have discovered multiple instances in which [Appellant] appears to have committed medical malpractice before the termination of his employment, often with infant victims.

93. Infant victims effectively have a three-year statute of limitations in Tennessee and a 21-year statute of limitations in Mississippi.

94. CRI is at risk of being liable for some of this malpractice.

95. CRI is entitled to a judgment that it is entitled to indemnification by [Appellant] if it is held liable for medical malpractice committed by [Appellant].

96. Since February 6, 2019, Defendants have discovered multiple instances in which [Appellant] appears to have committed billing fraud when he performed services for [Hamilton Eye Institute] and Rayner Clinic.

97. If it turns out that [Appellant] committed billing fraud for services performed as an employee of CRI, or if his billing fraud for others results in CRI having to repay any money it collected, then CRI is entitled to a judgment that it is entitled to indemnification by [Appellant].

The "Prayer for Relief" at the end of the counterclaims states, in relevant part:

WHEREFORE, PREMISES CONSIDERED, the Defendants respectfully pray and request the Court to:

\* \* \*

- 3 -

5. Rule that Defendant CRI is entitled to damages, regarding Counterclaim V, in an amount to be proven at trial.

6. Rule that Defendant CRI is entitled to damages, regarding Counterclaim VI, in an amount as of May 31, 2019 to be proven at trial.

Appellant answered the counterclaims and filed a motion to dismiss some of them.[2] Appellant tendered defense of the counterclaims to Appellee. Appellant also sought supplementary benefits from Appellee under a separate provision of the Policy for investigations of him by the Tennessee Board of Medical Examiners, the Mississippi Board of Medical Licensure, and the Centers for Medicare & Medicaid Services ("CMS")[3] (collectively, "the investigations"). The Tennessee and Mississippi investigations were initiated from statements by the CRI Defendants to the investigating bodies. The specifics of the investigations will be discussed *infra*. Appellee denied the requested coverage of both the counterclaims and the Tennessee and Mississippi investigations. Appellant filed a complaint against Appellee in the instant action, which was ultimately transferred by agreement of the parties to the Chancery Court of Williamson County ("the trial court"). Therein, Appellant alleged claims against Appellee of breach of contract, breach of the duty of good faith and fair dealing, and punitive damages. Appellant also sought a declaratory judgment that Appellee was required to provide the requested coverage. Appellant filed a motion for judgment on the pleadings and Appellee filed a motion for summary judgment. After a hearing in October 2020, the trial court granted Appellee's motion for summary judgment in an order entered November 23, 2020, concluding, *inter alia*:

I. Coverage

\*　　\*　　\*

No specific person was identified as being the victim of [Appellant's] alleged possible medical malpractice.

\*　　\*　　\*

---

[2] Appellee attaches an exhibit to its brief to support its averment that Count V was voluntarily dismissed. Appellee asserts, without citation to any authority, that we can take judicial notice of this "public record." We cannot consider attachments to briefs, and therefore we will not consider the exhibit. *See Carney v. State*, No. M2006-01740-CCA-R3-CO, 2007 WL 3038011, at \*4 (Tenn. Crim. App. Oct. 17, 2007) (stating that "documents attached to an appellate brief but not included in the record on appeal cannot be considered by this court as part of the record on appeal") (internal citation omitted). And while it appears that Appellant agrees that the claim was voluntarily "withdraw[n]" without prejudice, the parties do not argue or explain the dismissal's significance, so we will not address it. Moreover, it appears that the dismissal or withdrawal of Count V occurred after the trial court entered its final judgment in this case. There is a procedure for when a party wishes to bring to this Court's attention such post-judgment facts. *See* Tenn. R. App. P. 14(b). Despite this recourse being available, Appellee chose not to pursue it.

[3] As will be discussed *infra*, Appellant sought coverage with respect to the CMS investigation later on in the trial court proceedings, after Appellee filed its motion for summary judgment.

- 4 -

For the[] counter-claims to be covered under the insurance policy, they must involve a "medical incident." The counter-claims do not involve a "medical incident." Instead, they involve claims arising from [Appellant's] business and employment disputes with his former employer and former business partners/shareholders. The closest [Appellant] can come to pointing to a "medical incident" is the allegations by the counter-claimants that [Appellant] "appears to have committed medical malpractice before the termination of his employment, often with infant victims" and that [Appellant] committed serious protocol deviations in the clinical trials that resulted in "bad surgical outcomes." However, even these claims are not sufficient to trigger coverage. These claims are vague and do not allege a specific victim of medical malpractice.

## II. Exclusions

The types of claims made by the counter-claimants in the Shelby County Shareholders Lawsuit are specifically excluded from coverage by the Policy because [Appellant] would only be liable for those claims in his capacity as a member, partner, officer, proprietor, owner, or shareholder of CRI. Such liability is specifically excluded from the Policy. Also, pursuant to the Policy, coverage does not apply to liability assumed by [Appellant] under a contract or agreement, except a professional services contract. The Policy also excludes intentional acts, which are alleged in the counter-claims. The Policy excludes acts which would violate any statute, ordinance, law, rule, or regulation as well. Finally, the Policy excludes coverage for sexual conduct.

## III. Supplementary Benefits

In his Complaint in this Court, [Appellant] has requested that [Appellee] reimburse him for the costs he has and/or will incur in defending himself in the licensure investigations brought by Tennessee and Mississippi. These investigations were initiated by statements made by the [CRI Defendants] to the respective licensure boards. However, [Appellee] has demonstrated that the Policy "does not afford coverage or legal expense benefit for licensure investigations." Pursuant to Part IV, Section 14 of the Policy, supplementary payments only extend to ten specific types of investigations. Investigations of physicians by state medical licensure boards is not one of the types of investigations listed.

## IV. Conclusion

The Court finds that [Appellee] is entitled to summary judgment on all of [Appellant's] claims. The allegations made via the counter-claims. . . are not covered under [Appellant's] insurance policy with [Appellee]. In addition, the claims made in that lawsuit are specifically excluded from coverage from the Policy. Finally, the supplementary benefits [Appellant] seeks in this Court are not available under the Policy. Accordingly, the motion for summary judgment is GRANTED and this case is hereby dismissed.

(internal citations omitted).

In a subsequent order entered on December 2, 2020, the trial court denied Appellant's motion for judgment on the pleadings, finding that it was rendered moot by the prior grant of summary judgment.[4] Appellant appealed.

## II. ISSUES PRESENTED

The dispositive issues in this case are whether Appellee has a duty (1) to defend Appellant against the counterclaims and (2) to provide supplementary benefits to Appellant for the investigations. With respect to the first issue, the parties disagree over whether (a) the counterclaims involve "damages resulting from a medical incident" under the Policy; (b) any of the Policy's exclusions apply to bar coverage; and (c) Appellant complied with the Policy's notice provisions. With respect to the second issue, the parties disagree over whether (a) the investigations are "covered investigations" under the Policy; and (b) the acts giving rise to the investigations and the request for coverage of the investigations meet the necessary timing requirements.

## III. STANDARD OF REVIEW

"[A] trial court's decision to grant [a] motion[] for summary judgment is not entitled to a presumption of correctness on appeal." *Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 6 (Tenn. Ct. App. 1998) (citations omitted). Consequently, we "must make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Bowers v. Estate of Mounger*, 542 S.W.3d 470, 477 (Tenn. Ct. App. 2017) (quoting *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015)). "Summary judgment is proper where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Lemon v. Williamson Cty. Sch.*, 618 S.W.3d 1, 12 (Tenn. 2021) (quoting Tenn. R. Civ. P. 56.04). In

---

[4] Appellant does not appeal the trial court's denial of his motion for judgment on the pleadings, so we will not address it.

reviewing a summary judgment motion on appeal, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Shaw v. Metro. Gov't of Nashville & Davidson Cty.*, 596 S.W.3d 726, 733 (Tenn. Ct. App. 2019) (citations and quotations omitted).

## IV. DISCUSSION

Unfortunately, our ability to reach the merits of the issues the parties raise is hindered by the inadequacies of the trial court's order. Rule 56.04 of the Tennessee Rules of Civil Procedure states that "[a] trial court shall state the legal grounds upon which the court denies or grants the motion [for summary judgment], which shall be included in the order reflecting the court's order." In *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303 (Tenn. 2014), the Tennessee Supreme Court directed appellate courts to evaluate summary judgment orders to ensure that two requirements are met: (1) that the trial court adequately explains its ruling; and (2) that the ruling is "the product of the trial court's independent judgment." *Id.* at 314. If those requirements are not met, an appellate court may vacate the trial court's order granting summary judgment and remand the case for entry of an order that complies with *Lakeside* and Rule 56.04, rather than conduct "an archeological dig [to] endeavor to reconstruct the probable basis for the [trial] court's decision[.]" *Lakeside*, 439 S.W.3d at 314, 318 (quoting *Church v. Perales*, 39 S.W.3d 149, 157 (Tenn. Ct. App. 2000)); *cf. Winn v. Welch Farm, LLC*, No. M2009-01595-COA-R3-CV, 2010 WL 2265451, at *6 (Tenn. Ct. App. June 4, 2010) ("We cannot proceed with a review, speculating on the legal theories upon which the trial court may have ruled and the legal conclusions the trial court may have made."). Thus, in considering "a trial court's compliance or lack of compliance with [Rule] 56.04," we are to consider "the fundamental importance" of the two mandatory requirements set forth above. *Id.* at 314.

Several courts have been called on to apply the holding in *Lakeside*. Many cases involve orders in which there is doubt that the order was the product of the trial court's independent judgment, particularly where one party is directed to prepare an order in the absence of a detailed oral ruling.[5] *See, e.g.*, *Deberry v. Cumberland Elec. Membership Corp.*, No. M2017-02399-COA-R3-CV, 2018 WL 4961527, at *2 (Tenn. Ct. App. Oct. 15, 2018); *Battery All., Inc. v. Allegiant Power, LLC*, No. W2015-02389-COA-R3-CV, 2017 WL 401349, at *8 (Tenn. Ct. App. Jan. 30, 2017); *McEarl v. City of Brownsville*, No. W2015-00077-COA-R3-CV, 2015 WL 6773544, at *3 (Tenn. Ct. App. Nov. 6, 2015). Less common, however, is the scenario where the trial court's order is the product of its independent judgment, but contains little explanation of the trial court's legal reasoning— in other words, the trial court's order is not "adequately explained." *Lakeside*, 439 S.W.3d at 318. In some of these cases, the trial court gave little to no explanation in its order beyond the determination that summary judgment was warranted. *See, e.g.*, *Bertuccelli v. Haehner*, No. E2017-02068-COA-R3-CV, 2018 WL 6199229, at *4 (Tenn. Ct. App. Nov.

---

[5] It is entirely unclear from the record if the order at issue was prepared by a party.

28, 2018); *Ray v. Petro*, No. M2013-02694-COA-R3-CV, 2015 WL 137309, at \*5 (Tenn. Ct. App. Jan. 9, 2015).

In other cases, however, the trial courts entered orders containing some basis for the ruling, but the ruling was nevertheless held insufficient because it was not adequately explained. One such case is *Shaw v. Gross*, No. W2017-00441-COA-R3-CV, 2018 WL 801536 (Tenn. Ct. App. Feb. 9, 2018). In *Shaw*, one issue on appeal was the trial court's ruling that the plaintiff failed to comply with certain pre-suit notice requirements contained in the Tennessee Health Care Liability Act, Tennessee Code Annotated section 29-26-121(a)(3)(B). The trial court's order granting summary judgment to the defendants ruled that the notice letters were not timely mailed or were not mailed pursuant to the requirements of section 29-26-121(a)(3). The trial court therefore ruled that the plaintiff was not entitled to rely on the extension to the statute of limitations; as a result, the complaint was untimely. *Id.* at \*8.

We held, however, that this ruling was deficient. For one, the trial court did not address the question of substantial compliance, even though compliance with section 29-26-121(a)(3)(B) "can be achieved through substantial compliance." *Id.* at \*7, 8 (quoting *Arden v. Kozawa*, 466 S.W.3d 758, 764 (Tenn. 2015)). The trial court also did not provide "specificity as to the deviations that were made with regard to [the two defendants]." *Id.* at \*8. Finally, the order did not discuss prejudice or whether the defendants received actual notice. *Id.* at \*9. Importantly, although the notices that were sent were the central issue for purposes of summary judgment, "the trial court's written order fail[ed] to mention even a single address, date, attempted or successful mailing, or defendant specifically. Rather, the trial court's order conclude[d] that the notices were not sent properly with no discussion of the basis for that decision." *Id.* at \*9. We held that under these circumstances, the trial court failed to adequately explain its ruling. *Id.* We therefore vacated the judgment of the trial court and remanded for entry of an order that adequately explained its decision and applied the appropriate standard. *Id.* at \*10.

In another case, we likewise took issue with the trial court's order where it contained "many factual 'findings,' a detailed discussion of the general law surrounding premises liability, [and] a thorough discussion of the proof presented, but very little discussion of the trial court's actual legal reasoning regarding its ultimate conclusion." *Vaughn v. DMC-Memphis, LLC*, No. W2019-00886-COA-R3-CV, 2021 WL 274761, at \*11 (Tenn. Ct. App. Jan. 27, 2021), *no perm. app. filed* (vacating the grant of summary judgment to the defendant). Specifically, we held that the trial court had only addressed "the tip of the iceburg" in determining the central dispute at issue for purposes of summary judgment. *Id.*

Turning to the case-at-bar, we note that Appellant somewhat raises the issue of whether the trial court's order contains sufficient explanations for its findings and conclusions throughout his appellate brief. Appellee suggests that this issue is both waived for failure to be designated as an issue and without merit because the trial court's ruling

was "thoughtfully considered" and rendered in its independent judgment. We note, however, that a trial court's compliance with Rule 56.04 and *Lakeside* may be raised *sua sponte* in this Court, even if neither party specifically designates it as an issue on appeal. *See, e.g.*, ***Bertuccelli v. Haehner***, No. E2017-02068-COA-R3-CV, 2018 WL 6199229, at *2, 4 (Tenn. Ct. App. Nov. 28, 2018) (vacating the trial court's grant of summary judgment based on a *Lakeside* violation, where the issue was not specifically raised on appeal); ***Koczera v. Steele***, No. E2015-02508-COA-R3-CV, 2017 WL 1534962, at *2–3, 7 (Tenn. Ct. App. Apr. 28, 2017) (same); ***Potter's Shopping Ctr., Inc. v. Szekely***, 461 S.W.3d 68, 70-72 (Tenn. Ct. App. 2014) (same). Because we conclude that this issue is dispositive of this appeal, we will consider the adequacy of the trial court's order with regard to each of the issues on appeal.

Again, there are two main issues in this case: (1) whether there is a duty to defend against the counterclaims alleged by the CRI Defendants; and (2) whether the supplemental policy benefit extends to the investigations. We begin with the question of the investigations, as it is arguably the most deficient portion of the trial court's order.

**A.**

The central question with regard to this issue is whether the Policy's supplemental benefit coverage extends to the Tennessee, Mississippi, and CMS investigations. The Policy provides that Appellee "will pay the following expenses separate from any other applicable limit of liability," including:

> 2.2. reimbursement of **legal expenses** paid by **named insured** resulting from a **covered investigation**, provided that:
>
> > (a) the acts giving rise to the **covered investigation** occurred on or after the **retroactive date**;
> >
> > (b) the **covered investigation** is **first reported** during the **policy period**; and
> >
> > (c) such **legal expenses** are limited to:
> >
> > > (i) a maximum of $50,000.00 for each **named insured** for all **covered investigations** that are **first reported** during a **policy period** regardless of the number of investigating agencies or the number of claims brought . . . .[6]

---

[6] The terms in bold appear as such in the Policy.

- 9 -

The Policy contains ten definitions of the term "covered investigation." Of the ten definitions, only two are at issue. Appellant contends that all three investigations are covered by definition eight, which provides that "covered investigations" include:

> an investigation or proceeding commenced by any . . . state or federal regulatory agency, or by a contractor appointed by such organization or agency, related to fraud or abuse, violation of reimbursement rules or regulations, lack of a compliance plan or the presentation of any actual or allegedly erroneous or false claim(s) for reimbursement for health care services by **named insured**[.]

It is also undisputed that the conduct being investigated must have occurred on or after the Policy's February 14, 2019 Retroactive Date.

According to Appellant, the investigations all undisputedly involve allegations of billing fraud or abuse, violations of reimbursement rules and regulations, and false or erroneous claims for reimbursement. Further, Appellant notes that the investigations are being conducted by either state or federal regulatory agencies. As a result, Appellant contends that the investigations are covered under the above definition.

Appellant further contends that the CMS investigation falls within an additional definition of "covered investigation" as

> an investigation or proceeding commenced by any governmental or regulatory agency charged with the enforcement of laws regulating Medicare or Medicaid (or other federal or state health care program offered as an alternative to Medicare or Medicaid) to determine whether **named insured** provided **professional services** improperly to a patient covered by Medicare or Medicaid (or other federal or state health care program offered as an alternative to Medicare or Medicaid); . . . .

Finally, Appellant contends that the investigations include conduct that may have occurred after the February 14, 2019 retroactive date.

Appellee obviously disagrees on all counts. As for the CMS investigation, Appellee contends that this investigation was not raised properly at trial, as it was first raised in Appellant's response to Appellee's motion for summary judgment. As for the other investigations, Appellee's argument is three-fold: (1) the acts that give rise to the investigations occurred prior to the Policy's retroactive date; (2) the timing of the requests is outside the reporting period; and (3) the investigations do not meet any definition of a "covered investigation," as state licensure boards are not regulatory agencies "related to fraud and abuse, violation of reimbursement rules or regulations, lack of a compliance plan or the presentation of any actual or allegedly erroneous or false claim(s) for reimbursement

for health care services." Thus, the parties disagree about (1) whether the CMS investigation was properly raised; (2) whether Appellant met timing requirements applicable to the investigations; and (3) how the language of the Policy should be construed as applied to the investigations.

As to the final issue, the parties are engaged in a grammatical disagreement. Appellant contends that the phrase "related to fraud and abuse, violation of reimbursement rules or regulations, lack of a compliance plan or the presentation of any actual or allegedly erroneous or false claim(s) for reimbursement for health care services" modifies "an investigation or proceeding." Because all three investigations involve allegations of this kind, he argues they are covered by the supplemental policy benefit. Appellee, however, contends that the subject phrase modifies the term "agency," and that because the Tennessee and Mississippi investigations are being conducted by licensure agencies, rather than agencies specifically tasked with investigating fraud and the other named issues, the Tennessee and Mississippi investigations are not "covered investigations."

The entirety of the trial court's legal basis for granting summary judgment as to the question of covered investigations is as follows:

> In his Complaint in this Court, [Appellant] has requested that [Appellee] reimburse him for the costs he has and/or will incur in defending himself in the licensure investigations brought by Tennessee and Mississippi. These investigations were initiated by statements made by the [CRI Defendants] to the respective licensure boards. However, [Appellee] has demonstrated that the Policy "does not afford coverage or legal expense benefit for licensure investigations." Pursuant to Part IV, Section 14 of the Policy, supplementary payments only extend to ten specific types of investigations. Investigations of physicians by state medical licensure boards is not one of the types of investigations listed.
>
> . . . . Finally, the supplementary benefits [Appellant] seeks in this Court are not available under the Policy.

Distilled to its essence, the trial court's ruling amounts to a single sentence conclusion that investigations performed by licensure boards do not fit within any of the ten definitions of "covered investigations." *See Shaw*, 2018 WL 801536, at *7 (quoting *Beard v. Branson*, 528 S.W.3d 487, 502 (Tenn. 2017)). The trial court's ruling, however, provides no illumination as to how the trial court reached this decision.

First, the trial court's order does not mention the CMS investigation, but only the state investigations. Although Appellee contends that this issue was not timely raised, there can be no dispute that it was put into dispute prior to the summary judgment hearing. The

- 11 -

trial court's order does not, however, address Appellee's argument that it was not properly raised or whether the CMS investigation was a covered investigation.

The trial court's ruling also wholly fails to address any question of the timeliness of Appellant's request or whether the investigated conduct occurred on or after the Policy's retroactive date. In the trial court, these were significant areas of dispute among the parties, particularly as to the question of whether conduct fell on or after the retroactive date; Appellant even filed the declaration of one of his attorneys in support of his claim that the Mississippi and Tennessee investigations involved conduct that took place after February 14, 2019.[7] The trial court, however, does not address this dispute in its ruling. We recognize that these issues would be pretermitted by a holding that the investigations are not covered by the supplemental policy benefit, as the trial court ruled. But the trial court's order gives no indication that that is the reason for the omission of any discussion of this issue, leaving this Court to guess that was its reasoning. This is particularly true given the trial court's decision to address whether there was coverage for a "medical incident" with respect to the counterclaims, despite finding that coverage was nevertheless excluded by a multitude of exceptions in the Policy, as discussed *infra*.

Moreover, the trial court's legal basis for its conclusion that there was no coverage for the Mississippi and Tennessee investigations is also lacking. Here, there is no dispute that none of the ten definitions of "covered investigation" expressly applies to investigations by state and federal "licensure boards." The trial court's conclusion that medical licensure board investigations are not "listed" is therefore largely inapposite to the dispute at issue. Instead, the parties presented to the trial court detailed and specific arguments concerning the language of definition eight in particular. Clearly, the trial court ultimately agreed with Appellee's position that these investigations were not covered. But the trial court did not reference definition eight, the language of that definition, or the arguments of the parties in any fashion in merely holding that such investigations are not "listed." In our view, the parties' dispute "involves questions of law that require analysis and explanation." *Szekely*, 461 S.W.3d at 72. The trial court's single-sentence conclusion, however, fails to provide that necessary information. Instead, in the absence of any explanation whatsoever that is reflective of or responsive to the specific arguments raised in this case, we are left to guess as to why the trial court reached its conclusion. Thus, we cannot conclude that the trial court met its high judicial function of adequately explaining its ruling with regard to the coverage of the investigations under the supplemental policy benefit.

**B.**

---

[7] Specifically, attorney Ross Burris stated in a declaration that he has "personally spoken with individuals from the regulatory agencies involved with respect to the [Mississippi and Tennessee] Investigations" and "[t]he [Mississippi and Tennessee] Investigations include alleged conduct that took place after February 14, 2019."

- 12 -

The next issue involves whether Appellee has a duty to defend Appellant against the counterclaims. This dispute can be divided into three sub-issues: (1) whether the counterclaims involve "damages resulting from a medical incident"; (2) whether any of the Policy's exclusions apply to bar coverage of the counterclaims; and (3) whether Appellant complied with the Policy's notice provisions.

As to the first component of this dispute, the Policy provides that Appellee "will pay, on behalf of **insured**, all sums that **insured** becomes legally obligated to pay as **damages** resulting from a **medical incident** . . . ." A few sections down, the Policy further states that Appellee

> shall have the right and duty. . . to defend any lawsuit brought against **insured** . . . seeking **damages** resulting from a **medical incident**, whether actual or alleged, and even if the any of the allegations are groundless, false or fraudulent[.]

Thus, to trigger Appellee's obligation to defend and insure Appellant, the counterclaims must first involve a "medical incident," which the Policy defines as

> a single act or omission, or a series of related acts or omissions, by **insured** . . . that results, or is likely to result, in **damages** caused by the rendering of, or failure to render, **professional services** [medical services, including medical treatment, making medical diagnosis, and rendering medical opinions or medical advice] to any one person[.]

Both at trial and on appeal, Appellant argued, *inter alia*, that two of the counterclaims allege medical incidents: (1) Count V alleges that Appellant committed, in part, negligence and protocol deviations in his surgeries for a clinical trial, resulting in bad surgical outcomes for patients and reputational damage to CRI; and (2) Count VI alleges that Appellant appears to have committed medical malpractice, causing damages to infant victims and CRI.

In contrast, Appellee argues that the counterclaims do not seek "damages resulting from a medical incident" that are "caused by the rendering of, or failure to render, professional services to any one person," and that Appellant does not face "professional liability resulting from a medical incident." Instead, according to Appellee, the counterclaims "seek to impose *personal*—not *professional*—liability on [Appellant], and alleg[e] damages for his *business* obligations to his former employer (CRI) and fellow shareholders that are not based on the rendering of 'professional services to any one person.'" In other words, Appellee argues that "[w]hat [the CRI Defendants] do *not* seek from [Appellant], which is a threshold requirement for coverage to apply, are damages caused by [Appellant's] rendering of '**professional services** to any one person.'" (Internal citation omitted).

- 13 -

The trial court's ruling as to this specific dispute is as follows:

For the[] counter-claims to be covered under the insurance policy, they must involve a "medical incident." The counter-claims do not involve a "medical incident." Instead, they involve claims arising from [Appellant's] business and employment disputes with his former employer and former business partners/shareholders. The closest [Appellant] can come to pointing to a "medical incident" is the allegations by the counter-claimants that [Appellant] "appears to have committed medical malpractice before the termination of his employment, often with infant victims" and that [Appellant] committed serious protocol deviations in the clinical trials that resulted in "bad surgical outcomes." However, even these claims are not sufficient to trigger coverage. These claims are vague and do not allege a specific victim of medical malpractice.

Thus, the trial court's order as to this dispute is arguably more detailed than its decision regarding the covered investigations. But as to the two counts relied upon by Appellant to support a duty to defend, the trial court's ruling amounts to nothing more than a conclusion that these counts are "not sufficient to trigger coverage" because they are vague and do not allege a specific victim. The trial court again does not cite the language of the Policy or the arguments of the parties. Importantly, the trial court cites no legal authority in support of its conclusion that vagueness is both present and fatal here, or that a specific victim of malpractice must have been named in order for the duty to defend to be triggered. As a result, we are again left to wonder at what specific facts and arguments the trial court relied upon to reach its conclusion.

Despite its decision that no duty to defend was triggered, the trial court also went on to consider whether coverage was nevertheless excluded by the Policy. In particular, the parties focus on two separate types of exclusions, which they refer to as the "business enterprise exclusions" and the "contractual liability exclusion." The business enterprise exclusions derive from the following language of the Policy:

The insurance . . . does *not* apply to:

2.1 . . . . liability of **insured** in his/her capacity as a member, partner, officer, director  . . . , owner or shareholder of any **practice entity**;[8]

2.2 Liability of **insured** in his/her capacity as an owner, shareholder, proprietor, member, partner, director . . . , officer, trustee, superintendent or

_____

[8] The Policy defines "practice entity" as "a partnership, corporation, professional corporation, limited liability company, professional limited liability company, limited liability partnership, professional service association, or any similar entity organized to provide **professional services**."

- 14 -

administrator, of any hospital, sanitarium, clinic with bed and board facilities, nursing home, ambulatory surgery center, laboratory, managed care organization, health maintenance organization, preferred provider organization, exclusive provider organization or other similar health care entity, or other business enterprise[.]

The contractual liability exclusion stems from the provision of the Policy stating that coverage does not apply to "liability assumed by **insured** under a contract or agreement, except a **professional services contract**." The Policy defines a "professional services contract" as "a written contract or written contractual provision in which **insured** agrees to provide **professional services** and to indemnify any person or entity for losses or defense costs caused, or allegedly caused, solely by the negligence of **insured** and resulting from a **medical incident**."

Both in the trial court and on appeal, Appellant contends that the business enterprise exclusions are inapplicable because Counts V and VI stem from his practice of medicine and his alleged medical malpractice, not solely his capacity as a business associate of CRI. In contrast, Appellee argues, *inter alia*, that even if the counterclaims do fall within the Policy's coverage, coverage is nonetheless precluded under the business enterprise exceptions, because "[t]he liability of [Appellant] sought by the [counterclaims], if any, arises solely from his status as a member, partner, officer, proprietor, director, owner or shareholder of CRI," rather than "from his rendering of professional services to any one person." According to Appellee, "[n]ot everything a physician does is the practice of medicine; not all liability flowing from a physician's professional conduct is the result of a medical incident."

Appellee argues that the counterclaims are also excluded under the contractual liability exclusion because they seek indemnification for claims that might be asserted against the CRI Defendants by virtue of the CRI Defendants' contractual relationship with Appellant. Appellant responds that Appellee has failed to explain or demonstrate that the basis for his possible liability to the CRI Defendants lies in contract, rather than some other basis for liability. *See Massachusetts Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 22, 39 n.10 (Tenn. Ct. App. 2002) (citations omitted) ("[The] insurance company has the burden of proving that an exclusion in its policy applies to a claim.").

The trial court's order as to the Policy exclusions is as follows:

The types of claims made by the counter-claim[]s . . . are specifically excluded from coverage by the Policy because [Appellant] would only be liable for those claims in his capacity as a member, partner, officer, proprietor, owner, or shareholder of CRI. Such liability is specifically excluded from the Policy. Also, pursuant to the Policy, coverage does not apply to liability assumed by [Appellant] under a contract or agreement,

except a professional services contract. The Policy also excludes intentional acts, which are alleged in the counter-claims. The Policy excludes acts which would violate any statute, ordinance, law, rule, or regulation as well. Finally, the Policy excludes coverage for sexual conduct.

As an initial matter, many of the trial court's conclusions are not responsive to the issues presented by the parties. To the extent that intentional acts may have been alleged in the counterclaims, the trial court fails to point out which allegations in the counterclaims allege intentional acts that would be excluded under this provision. Moreover, Counts V and VI, the basis for Appellant's contention that a duty to defend exists, clearly allege acts of negligence. *See Gunter v. Lab'y Corp. of Am.*, 121 S.W.3d 636, 639 (Tenn. 2003) (citation omitted) ("Medical malpractice actions are specifically controlled by the medical malpractice statute, Tennessee Code Annotated section 29–26–115, which essentially codifies the common law elements of negligence."). The fact that those and other counts may also allege excluded acts is therefore largely irrelevant to the analysis. *See Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996) ("If *even one* of the allegations [in a complaint against an insured] is covered by the policy, the insurer has a duty to defend" the insured, regardless of how many allegations in the complaint "may be excluded by the policy."). The trial court's order also parrots the Policy language excluding coverage for violations of statutes, ordinances, laws, rules and regulations, without pointing out what laws were alleged to have been violated or indicating which counts in the counterclaims include allegations of this type. The same is true of the trial court's reference to allegations of sexual conduct.

The trial court's findings as to the two exclusions that are centrally at issue in this case are also deficient. Once again, the trial court's order does not discuss the parties' legal arguments on this issue, the language of the Policy it is applying, or the analysis that was used to reach its ultimate result. Instead, we are provided only with conclusory rulings. As for the business enterprise exceptions, the trial court ruled that Appellant's liability to the CRI Defendants is based only on his capacity as "a member, partner, officer, proprietor, owner, or shareholder of CRI"; the trial court does not, however, cite any portion of Appellant's contracts with the CRI Defendants to support this ruling. The trial court also fails to point to any portion of the counterclaims that demonstrate or allege that liability is only imposed on Appellant by virtue of these excluded relationships. *See Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007) (citations omitted) ("[W]hether a duty to defend arises depends solely on the allegations contained in the underlying complaint. . . ."); *St. Paul Fire & Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994) ("[T]he pleading test for determination of the duty to defend is based exclusively on the facts as *alleged* rather than on the facts as they actually are[.]"); *Drexel Chem. Co.*, 933 S.W.2d at 480 (quoting *Glens Falls Ins. Co. v. Happy Day Laundry, Inc.*, 19784 T.V., 1989 WL 91082 (Tenn. App. August 14, 1989)) ("An insurer may not properly refuse to defend an action against its insured unless 'it is plain from the face of the

complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage.'").

As to the contractual liability exception, the trial court's order states that "coverage does not apply to liability assumed by [Appellant] under a contract or agreement, except a professional services contract." To the extent that this even constitutes a ruling that the counterclaims allege liability that Appellant assumed under contract and thus is not covered under the Policy, the trial court again does not cite which contracts or provisions thereof Appellant assumed liability under. Nor does the trial court explain which of the counterclaims allege that Appellant's liability arises out of contract. *See Moore & Assocs., Inc.*, 216 S.W.3d at 305; *Torpoco*, 879 S.W.2d at 835; *Drexel Chem. Co.*, 933 S.W.2d at 480. Finally, the trial court's reliance on the contractual liability exclusion specifically mentions that the exclusion does not apply to "professional services contracts." Yet the trial court does not analyze whether this exception is present in this case, i.e., whether a professional services contract is at issue.

Like the dispute concerning the supplemental policy benefit, the parties have also raised a timing issue with regard to duty to defend issue—whether Appellant complied with all notice provisions in the Policy. The parties raised this issue in the trial court and spend considerable time addressing it on appeal. Appellant argues that he provided notice within the applicable reporting period, and that an insurer cannot deny coverage or refuse to defend an insured on the basis of late notice unless it experiences prejudice. Appellee argues that Appellant provided late notice of the counterclaims to Appellee, which should bar coverage, and that Appellee does not need to demonstrate prejudice, but it was prejudiced in any event.

Despite Appellant's insistence that this issue was decided in his favor, we have doubt. Specifically, Appellant points to portions of the trial court's factual recitation as evidence that the trial court addressed this issue and ruled in his favor. From our review of the trial court's order, however, we conclude that this factual recitation contains no conclusions concerning whether the notice was timely. Again, this issue may be pretermitted by a ruling that the Policy provides no coverage. But the trial court chose to address other alternative arguments about the coverage issue. As such, we are again unsure if the trial court's failure to address this issue was based on a determination that the issue was pretermitted. The purpose of Rule 56.04 is to ensure that we need not guess as to basis of the trial court's ruling. *Cf. Lakeside*, 439 S.W.3d 303 at 313 (explaining that summary judgment orders should contain an "explanation of the reasons for granting the summary judgment" so as to avoid "complicating the ability of the appellate courts to review the trial court's decision").

**C.**

In sum, the trial court's order evinces varying degrees of compliance with Rule 56.04 and *Lakeside*. To be sure, the trial court's order does provide more than a simple notation that summary judgment is granted in Appellee's favor. The trial court's order here is therefore not the most barren order that this Court has ever encountered, as it superficially provides the legal grounds for its ruling. But Rule 56.04 and *Lakeside* require more—that the decision be adequately explained. *Cf. Black's Law Dictionary* 45 (9th ed. 2009) (defining "adequate" as "[l]egally sufficient"). And the inadequacies in the trial court's ruling, while perhaps not amounting to the glaring errors present in other cases, are a pervasive issue in this case. As a result, we cannot conclude that the trial court's rather conclusory recitation of the legal grounds upon which it based its decision meets the mandate that its analysis be more than perfunctorily explained.

It is likely that we could solider on to review some of the issues in this case in light of the fact that they involve issues of law. But all summary judgment motions involve issues of law; that fact alone does not exempt the trial court from its duty to provide analysis for this Court. *Cf. Szekely*, 461 S.W.3d at 72 (holding that the case involved "questions of law that require analysis and explanation"). And the Tennessee Supreme Court has cautioned us against this practice, as requiring explanations from the trial court "promote[s] respect for and acceptance of not only the particular decision but also for the legal system." *Lakeside*, 439 S.W.3d at 313. Given the complexity of the issues presented in this case, we cannot conclude that it would be appropriate for us to consider the merits of this appeal without additional "analysis and explanation" from the trial court. *Szekely*, 461 S.W.3d at 72. We therefore vacate the judgment of the trial court and remand for the entry of an order explaining the basis of its rulings on each issue raised by the parties.[9]

## V. Conclusion

The judgment of the Chancery Court of Williamson County is vacated, and this case is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellee State Volunteer Mutual Insurance Company, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

---

[9] To the extent that one party has asserted there are post-judgment facts to be considered, this and other matters can be raised in the trial court upon remand.